BRUNOT, Justice.
 

 This is a compensation suit. It is brought under the provisions of Act No. 20 of 1914, as amended by Act No. 242 of 1928. The prayer of the plaintiff is for a judgment for $7.80 per week for 200 weeks, or, in the alternative, for a like sum per week for 150 weeks, with legal interest on past-due payments from April 21, 1932, until paid, and for costs of the suit. The judgment of the district court was in favor of the plaintiff. The amount awarded plaintiff was $3.76 per week for 90 weeks, with legal interest on past-due payments from April 14,1932, until paid, and costs.
 

 The judgment was based on the plaintiff’s loss of four fingers. Both litigants appealed from the judgment, and the defendant answered the plaintiff’s appeal. The Court of Appeal, Second Circuit, .amended the judgment by increasing the number of payments and the amount thereof to $7.48 per week for 150 weeks, with legal interest on each weekly
 
 *346
 
 payment from its due date until paid, less a credit of $39.25, and for all costs. 151 So. 778.
 

 This judgment is based upon the plaintiff’s loss of a hand. After exhausting their remedies in the Court of Appeal, both litigants applied to this court for writs of certiorari and review. Both applications were granted; the record has been sent up and the case is now before us. The facts of the case are fully and accurately stated by Judge Mills in the opinion of the Court of Appeal. We will quote them:
 

 “Plaintiff, working in the woods as a log cutter for defendant, while in the course of' his employment accidentally cut with an ax, the inside of the second finger on his right hand so deeply that the tendons were severed. They were sutured and the wound dressed by the company’s physician, who bandaged the hand with the view of keeping the injured finger extended. This purpose was not accomplished, as the finger healed so that it was stiff and semiflexed, seriously interfering with the use of the whole hand. In order to rectify this condition plaintiff requested of the company’s surgeon that the finger be amputated at its junction with the palm of the hand. Before performing this operation the surgeon warned plaintiff of the possible serious consequences and informed him that in no event would the company pay him compensation in the excess of that allowed for the loss of the finger.
 

 “After the amputation the hand was put in a splint and bandaged with the remaining fingers extended to prevent them from drawing up. When the splint and bandage were removed, it was discovered that this attempt had failed also, as the fingers were stiffened in a claw-like position, which, at the time of the trial, had become permanent. The testimony shows that there is some voluntary movement in the thumb but practically none in the fingers. * * *
 

 “We find, as a fact, that the hand, except for the injury to the fingers, is not physically affected, but that the stiffened position of the fingers, semiflexed inward toward the palm, renders the whole hand useless for manual labor, which is the only class of work the plaintiff, an ignorant negro, has ever been qualified to perform.”
 

 It is not denied that the plaintiff is entitled to compensation, but, inasihuch as plaintiff does not ask for compensation under the general disability subsections of Act No. 20 of 1914, as amended by Act No. 242 of 1928, the question which was presented to the Court of Appeal, and which we are now called upon to decide, is whether plaintiff is entitled to compensation under section 8 (1) (d) (3), of the act, which provides for weekly payments for 20 weeks for the loss of a finger, other than the index finger ;• or, under section 8 (1) (d) (2) and (3), which provides for weekly payments for 90 weeks, for the loss of four fingers ; or, under section 8 (1) (d) (5), which provides for weekly payments for 150 weeks for the loss of a hand.
 

 The Court of Appeal found, as a fact, that the plaintiff’s disability was equivalent to the loss of a hand, and it rendered judgment accordingly.
 

 We háve read the testimony very carefully, and we have reached the same conclusion, We also concur in the conclusion
 
 *348
 
 reached by the Court of Appeal that the plaintiff’s hand was rendered useless by the curling of the middle finger into the palm of the hand, and that the amputation of that finger was performed, primarily, to lessen his disability. Unfortunately it did not do so. There is some conflict in the expert testimony as to the effect the amputation of the finger had, or might have had, upon the plaintiff’s hand. In view of our finding that the hand was already useless when the decision to amputate the finger was reached, the disagreement mentioned is of no importance. We find the opinion of the Court of Appeal so clear and accurate that we quote with approval therefrom and adopt as our own the-following:
 

 “Plaintiff takes the position that where capacity to work is affected, paragraph (d) does not apply and that compensation in such a case is due under said paragraphs (a), (b), or (c) of subdivision 1 of section 8, covering general disability. In our view such a construction would result in the elimination from the act of all that part of paragraph (d) allowing a fixed compensation for specific losses. The act is designed to protect and compensate manual workmen engaged in certain hazardous occupations, as distinguished from lawyers, doctors, artists, and those following intellectual employments. It is clearly apparent that no workman can lose an arm, a leg, a hand, or a foot, not to mention both arms, both legs, and both eyes, without its affecting his capacity to work. The terms of the act itself, then, do not justify a finding that the provisions of paragraph (d) do not apply where the ability to work is affected.
 

 “It was held in the leading case of James v. Spence & Goldstein, 161 La, 1108, 109 So. 917, where an injury to the fingers caused a temporary loss of the use of a hand, that though compensation was allowable under section 8, subd. 1, par. (c), for partial disability, the period could not exceed the 150 weeks allowed under subdivision 1, par. (d), subpar. 5, for the loss of a hand. This case has been followed in many subsequent decisions.
 

 “In the present case, the injury and disability to the hand being total and permanent, it comes squarely under paragraph (d) and not under paragraph (c) unless we should find that the case of James v. Spence & Goldstein has been overruled.
 

 “The recent case of Wilson v. Union Indemnity Co. (La. App.) 150 So. 309, after careful consideration and review of the whole jurisprudence, holds that it has been overruled, is no longer authority, and supports the contention of plaintiff in the present case. It would be simple and'easy to follow the Wilson Case and await the action of the Supreme Court, but the matter is so important to litigants under the Compensation Act that we believe it our duty to express our views on the subject-, even at the unpleasant risk of disagreeing with our learned brothers of the Orleans circuit.
 

 “The principal case relied upon in the Wilson decision is that of Knispel v. Gulf States Utilities Co., 174 La. 401, 141 So. 9, 11. In our view this case is not in point as an examination of it shows that it applies only to subparagraph 16 of paragraph (d), which reads as follows:
 

 “‘In cases not falling within any of the provisions already made where the employee is seriously permanently disfigured about the
 
 *350
 
 face or head or where the usefulness of a physical function is seriously permanently impaired, the Court may allow such compensation as is reasonable and as is in proportion to the compensation hereinabove specifically provided in the cases of specific disability, not to exceed 65% of wages during one hundred weeks.’
 

 “Of course, cases involving disability to work do not come within the provisions of this paragraph because they are covered by paragraphs (a), (b), (c), and (d) up to subparagraph 16, and subparagraph 16 by its own terms applies only ‘in cases not falling within any of the provisions already made.’ As indicated by the use of the expression, ‘cases of specific disability,’ and said subparagraph 16, it is clear that paragraph (d) up to subparagraph 16, applies to cases of specific disability, whereas the preceding paragraphs apply to general disability.
 

 “The ease of Black v. La. Central Lumber Co., 161 La. 889, 109 So. 538, 545, cited in the Knispel Case, did not involve the issues now before us, for in that case the court, to make its position clear, said:
 

 “ ‘There is no occasion for deciding in this case, and therefore we do not decide, whether the period of compensation should be so restricted that the total payments will not exceed 60 per cent, of the wages which the injured employee was earning at the time of the accident, for the period of 150 weeks.’
 

 “This is, if possible, made plainer in the opinion in Rodriguez v. Standard Oil Co., 166 La. 332, 117 So. 269, 271, where, in referring to the case of James v. Spence & Goldstein, the court through its Chief Justice, Mr. O’Niell, said:
 

 “ ‘The ruling in that respect was not inconsistent with anything that was said or decided in Black v. Louisiana Cent. Lbr. Co., supra, for in that case there was no occasion for deciding- — and we carefully refrain from saying — whether the compensation allowed for a partial loss of the use of a hand should be so limited that it could not, under the peculiar facts of any given case, exceed the amount allowed by the statute for the total and permanent loss of the use of a hand.’
 

 “The court then went on to decide:
 

 “ ‘The plaintiff’s misfortune is a sad one, for which the compensation allowed by the statute gives poor consolation. But the statute speaks for itself — and speaks so plainly that there is nothing left for interpretation. When the law says — as it does say in this case- — that the compensation for the total and permanent loss of the use of a finger is 65 per centum of the weekly wages of the injured employee for 20 weeks, we have no right to allow more, by computing 65 per centum of the loss of wage-earning capacity during the period of disability, not beyond 300 weeks.’
 

 “What the court did hold in the Knispel Case is that under its peculiar facts the general disability clauses applied because plaintiff had suffered a disability and had not lost an eye or the use of one. We quote from the opinion:
 

 “ ‘We feel that the ease is not governed by subsection (d), par. 9, relative to the loss of an eye, even when aided by paragraph 14 of that subsection, for, though an eye may be con
 
 *352
 
 sidered a “member” as well as an “organ,” under tbe terminology of! tbe act, nevertheless plaintiff has not lost an eye nor the total use of one.’
 

 “The injury in the Knispel Case was unusual. We quote that part of the opinion describing it:
 

 “ ‘The defect in plaintiff’s vision is caused by paresis of the superior oblique muscle of the right eye, brought about as the direct result of his fall from the pole supporting the transmission wires. This injury to the eye causes plaintiff to see double when his head is in certain positions, that is, to see two objects where there is only one — a condition known as diplopia. The vision in either eye, when the other is closed, is 20-20, which is normal. However, with both eyes open, when the first examination was made, which was in November, 1920, the injury to the right eye caused a defect in visibility in that eye of 20 per cent., and when the second examination was made, some eleven months later, this defect in visibility had fallen to 15 per cent., showing an improvement of 5 per cent, during that period.
 

 “ ‘With the injured eye completely closed by sewing the lid down — which seems to be an approved method — or should plaintiff wear a piece of green cloth over the injured eye, or a dark or a frosted glass over it, so as to completely obstruct vision out of it, any one of these methods will enable him to see as well as any one-eyed man. If plaintiff should lose his uninjured eye, the injured eye could be used then with the same effect as was the uninjured eye, for with either eye closed plaintiff is able to see as normally as a one-eyed man, out of the injured or the uninjured eye, without reference as to which is left open. The double-vision may be reduced by the use of a prism glass over the defective eye, but by such method it cannot be entirely eliminated.
 

 “ ‘The effect of the double vision is totally to disable plaintiff from pursuing his occupation as a lineman, or any occupation involving, as necessary to safety, accurate estimates of distances and levels. He is incapacitated to follow any occupation requiring the use of cutting instruments, or requiring the driving of nails, or the doing of work from a scaffold. He is therefore incapacitated to do the work of a carpenter or any work similar to his occupation as a lineman.’
 

 “We therefore, with the utmost respect for the opinion of our brothers, cannot see how the Knispel Case conflicts with, modifies, or overrules the decision in the case of James v. Spence & Goldstein, and Rodriguez v. Standard Oil Company, supra. Nor do we find that the other two cases cited, that of Fulmer v. McDade Gin Co. (La. App.) 142 So. 733, and Whitley v. Hillyer-Deutsch-Edwards, Inc. (La. App.) 142 So. 798, have that effect.
 

 “Therefore, having found, as a fact, that plaintiff’s injury is equivalent to the loss of a hand, we find upon the authority of subparagraph 5 of paragraph (d) of subdivision 1 of section 8, and upon the further authority of the decision in the case of James v. Spence & Goldstein, supra, and Rodriguez .v. Standard Oil Co., supra, that he is entitled to compensation for a fixed period of 150 weeks.
 

 “The next question is the basis for the weekly allowance. It seems that for several
 
 *354
 
 months prior to the accident, plaintiffs employer, because of the ecomonic situation, had been, working its crews only half time, or three days per week. Defendant contends that the actual money earned was plaintiff’s weekly wage.
 

 “In the latest and controlling case on this subject, that of Rylander v. T. Smith & Sons, 177 La. 716, 149 So. 434, our Supreme Court held that a workman’s weekly wage was not computed on the basis of the two or three days a week his employment was limited to by economic conditions, but on the normal employment of six days a week; the purpose of the act being to compensate the workman for the loss of ability to work in the future rather than the actual loss of pay that he was receiving at the time. Upon the authority of this case we find that plaintiff’s weekly wage should be computed on the basis of a six-day week.
 

 “It then remains to determine plaintiff’s daily rate of pay at the time of the injury. Plaintiff being paid by the number of feet of logs he cut per day, there was as a matter of fact no daily rate of pay. The act never intended to exclude such a workman from the protection of its provisions. The average daily earnings of the plaintiff in this case for the days that he was employed was $1.92. Though the situation is not covered by the specific terms of the act, we feel justified in finding in this case that this amount was his daily rate of pay. Plaintiff then is entitled to recover 65 per centum of his weekly wage of $11.52, which is $7.48, for a period of 150 weeks. Defendant is entitled to a credit of $39.25 for groceries advanced under an agreement that their cost was to be taken out of the ultimate compensation.”
 

 For the reasons assigned, the judgment of the Court of Appeal, under review, is affirmed, with costs.