## BARR v. UNITED GAS PUBLIC SERVICE CO. et al.*

### No. 5038.

Court of Appeal of Louisiana.
Second Circuit.
June 29, 1935.

Hawthorne & Files, of Bastrop, for appellant.

Madison, Madison & Fuller, of Monroe, for appellees.

DREW, Judge.

This is a suit for compensation, submitted on the following agreed statement of fact:

"It is agreed by and between counsel for plaintiff and defendants that this case may be taken up and tried on the pleadings filed and the following statement of fact, to wit:

"I. At the time of the injury to Chas. S. Barr, he was employed by United Gas Public Service Company, his occupation being hazardous within the purview of the Workmen's Compensation Act (Act No. 20 of 1914, as amended), and this case is governed solely by said compensation act.

"II. At the time of the injury to and death of said Chas. S. Barr, plaintiff, Mrs. Mabel Watts Barr was his lawful wife, living with him and dependent upon him for support, and is entitled to benefits, as widow, amounting to 32½ per cent. of the weekly wage of Chas. S. Barr, for a period not exceeding 300 weeks, beginning July 22, 1934, for which payments both defendants herein are liable in solido.

"III. Attached to and made a part of this agreed statement of fact are copies of the application for employment and copies of the monthly distribution sheets kept by United Public Service Company, which reflect the correct record of the employment of said Chas. S. Barr, the days and numbers of hours he worked, and the amounts paid him.

"IV. During the entire time of the employment of Chas. S. Barr by United Gas Public Service Company, said company was operating under the provisions of the National Industrial Recovery Act (48 Stat. 195), and under what is known as the Proposed Code of the American Gas Association. Under the provisions thereof, this employee was not permitted to work more than 40 hours per week, nor was he permitted to work for any other person or company engaged in the same type of work any additional time, as long as the said code remained in effect.

"V. When said company began operating under said proposed code, the rate of pay per hour for employees then doing the same kind of work said decedent was employed to do was raised from 30 cents per hour to 40 cents per hour, which change in the rate of pay was made prior to the time of the employment of Chas. S. Barr.

"VI. As shown above and as shown by the work sheets attached, at the time of the injury said Chas. S. Barr was employed to work at the rate of 40 cents per hour, not to exceed 40 hours per week, which ordinarily was divided into 4 working days of 10 hours each.

"VII. Defendants herein have paid $150 funeral expenses. They have paid all hospital and medical expenses incurred, which amounted to $367.50.

"VIII. At the time the said Chas. S. Barr was injured, he was taken to St. Francis' Sanitarium, in Monroe, La., in an ambulance provided by his employer; a private room was engaged by his employer, and special nurses were employed by his employer to administer to him; his employer engaged its physicians and surgeons to render medical and surgical services; and made all arrangements with the owner of the ambulance, the hospital, nurses, and doctors for the expenses incurred. No mention was made either to Chas. S. Barr or to plaintiff that either of them would be liable for any expenses and that the amounts paid by defendants, exceeding the liability for medical expenses imposed upon the employer and its insurer by law, would be deducted from any compensation payments due to said Chas. S. Barr or plaintiff. Neither Chas. S. Barr nor plaintiff herein were informed as to the amount of the expenses being incurred, and plaintiff herein had no knowledge as to the amount of said expenses until the filing of the answer herein. Defendants, therefore, do not now claim in this suit that plaintiff is liable to them for excess medical expenses paid by them.

"IX. The sole issue in this case is whether compensation payments should be calculated upon the basis of a weekly wage of $16, being 40 cents per hour times 40 hours per week, or upon a weekly wage of $24, being $4 per day times 6 days per week."

The last paragraph of the agreed statement of fact correctly states the issues involved herein. The law fixing the number of days per week upon which to base the weekly wage in compensation cases was clearly and unequivocally settled by the case of King v. American Tank & Equipment Corporation (La. App.) 144 So. 283, 289, which was quoted from with approval by the Supreme Court in the case of Rylander v. T. Smith & Sons, Inc., 177 La. 716, 149 So. 434, 435, which decisions were followed by this court in the later cases of Jones v. Southern Advance Bag & Paper Co. (La. App.) 157 So. 754, and Calhoon v. Meridian Lumber Co. (La. App.) 151 So. 778, Id., 180 La. 343, 156 So. 412. The last-cited case went to the Supreme Court on a writ of certiorari and was affirmed there. In these cases it was held that, regardless of the number of days an employee was employed to work, unless it was for a 7-day week, the weekly wage would be based upon a 6-day week. In the King Case, we said: "If the five-day working week ever becomes a law, it no doubt will then govern."

Prior to the time the deceased husband of plaintiff herein was employed by defendant, the National Industrial Recovery Act of Congress was passed, and, under its provisions, the Code of Fair Competition was put into effect fixing the number of hours per week an employee was allowed to work for defendant company, which was 40 hours at a rate of pay of 40 cents per hour. Deceased worked 4 days per week, of 10 hours a day. After the passage of the National Industrial Recovery Act, the case of Suire v. Union Sulphur Co. et al., 155 So. 517, was decided by the First Circuit Court of Appeal of this state, in which it held that the number of days per week upon which compensation wages could be based when one was employed by any concern or business governed by said act was the number of days allowed under said act. Since this appeal was lodged here and after the case was submitted to this court, the Supreme Court of the United States has decided that the National Industrial Recovery Act was unconstitutional and therefore of no effect. See the case of A. L. A. Schechter Poultry Corporation v. United States of America, 55 S. Ct. 837, 79 L. Ed. ——, commonly spoken of as the "sick chicken" case.

Defendant and appellee's contention for a 4-day week was based solely on the National Industrial Recovery Act and the Suire v. Union Sulphur Co. Case. The said act was a temporary emergency act which at the time this suit was filed would have expired on June 16, 1935, unless sooner repealed by act of Congress or by proclamation of the President of the United States. It is admitted that plaintiff is entitled to compensation for a period of 300 weeks, beginning July 22, 1934, which is nearly 6 years, and the temporary emergency act commonly spoken of as the N R A,

would have expired within less than 11 months' time after the first payment to plaintiff began; and if we should find that the N R· A did govern as to the number of working days per week upon which to base compensation due plaintiff, it certainly cannot govern for a longer period than the life of the act, which is fixed in the act. The N R A was enacted due to unusual economic conditions and was only a temporary law, and the ruling in the Rylander Case, which quoted from the case of King v. American Tank & Equipment Corporation, as follows,

" 'Under defendant's contention (to the contrary), one injured while working only one, two, or three days a week, due to unusual economic conditions, should only be allowed compensation at 65 per cent. of his daily wage, based upon the number of days then employed, although he has become totally disabled and will never be able to work again, when if he had not been injured, he could possibly have secured employment for six days a week in the near future. The accident and injury have deprived him of the ability to work in the future, when he could secure full time employment.'

"This was correct. The workman's compensation statute is not a statute allowing the workman damages for injuries sustained in the course of his employment even through the negligence or fault of his employer. It is essentially insurance against the loss or diminution of earning capacity, see section 8, subsec. 1 (a) (b) (c),"

applies with equal force to a temporary emergency act of Congress, which is brought about by the same conditions recited in the above quotation. If the N R A, by its own terms, had not declared it was an emergency measure of a temporary nature, a different situation might confront us. The very purpose and reason the courts of this state adopted a 6-day working week as the basis of awards in compensation suits was in no way affected or changed by the temporary emergency measure passed by Congress.

The deceased, who was killed while in the employ of defendant, was deprived of the opportunity to work 6 days a week in the future when the economic depression had passed, just the same as he would have been had the N R A never been enacted. There is no sound reasoning for the temporary measure to have any more force or effect than a solemn contract entered into between employer and employee for a 3-day week, due to an economic emergency which we have held did not change the working week from a 6-day week to a 3-day week, as a basis for fixing compensation. Furthermore, the fixing of 40 hours per week as the number of hours one was allowed to work in a certain trade, in which the deceased was engaged, did not deprive him of the right to work in other trades for the remainder of the week. We find no good reason to alter or change the jurisprudence which has been fully settled by the first four cases cited in this opinion and conclude that plaintiff is entitled to compensation, based upon a 6-day working week. Deceased was earning $4 per day, and his widow, plaintiff herein, is entitled to 32½ per cent. of $24 per week, or $7.80 per week.

It therefore follows that the judgment of the lower court is amended by increasing the amount due each week from $5.20 to $7.80, and in all other respects the judgment is affirmed; cost of appeal to be paid by appellee.