## PROVOST v. FOLSE.

### No. 1481.

Court of Appeal of Louisiana. First Circuit.
June 29, 1935.

C. Arthur Provost and James L. Helm, both of New Iberia, for appellant.

Voorhies & Labbe, of Lafayette, for appellee.

LE BLANC, Judge.

Plaintiff, Cyrus Provost, was employed as a benchman in the sash and door factory of the defendant, Edgar P. Folse, in the city of New Iberia. On June 26, 1930, he was sent by his employer to the Frederick Hotel to replace a broken glass in one of the skylights, and while engaged in the performance of this duty, he fell to the floor in the lobby of the hotel and received injuries to both of his arms. The injuries were of a serious nature, and he was placed on compensation by his employer; the payments being made regularly by the insurance carrier for a period of 18 weeks, after which it appears it went into receivership. The defendant thereafter continued making the payments regularly for a period of 138 weeks, at the end of which time he stopped as he contended that plaintiff had fully recovered from his injuries and was able to engage in work of a reasonable character.

Three months after the defendant stopped paying him his compenstion, plaintiff instituted this suit claiming that as a result of his injuries he was permanently and totally disabled from performing work of any reasonable character, and praying for the full compensation allowed under the statute, not, however, beyond 400 weeks.

The defendant presented three issues to the court: First, that plaintiff was injured as a result of his own negligence in not using a safe way and an adequate guard in performing his work; second, the extent and the nature of his injuries and the consequent result as affecting his ability to do work of any character; and, third, if he has lost the use of certain members which he claims render him disabled, should he recover for total disability or should he be limited to recovery as for the loss of the use of such member.

The district judge gave the case the most careful consideration and assigned elaborate reasons for judgment in favor of the plaintiff holding that the testimony did not sustain the first defense, and that both of plaintiff's hands were injured to such an extent as to render him unable to do work of any reasonable character, and therefore he was entitled to compensation for the period of 400 weeks, subject of course, to a credit for the number of weeks which had already been paid by the defendant and his insurance carrier. Defendant has appealed.

We find no difficulty in agreeing with the district judge in his holding that the first defense urged was not supported by the evidence in the case. The compensation statute, section 28 of the original Act No. 20 of 1914, provides that: "No compensation shall be allowed for an injury caused * * * (3) by the injured employee's deliberate failure to use an adequate guard or protection against accident provided for him. * * *" There was no special adequate guard or protection provided for the employee in this case. In his attempt to undertake the work he was about to perform, he was kneeling on a board or plank about two inches by six in dimension, which was part of the frame surrounding the skylight, apparently in safety, and as he gave a jerk to take the putty off the glass, he fell. There were no witnesses to the actual falling, and his testimony stands uncontradicted. Perhaps a wider board would have afforded more safety; but there was no such board provided for him by the employer. The fact that there was no special adequate guard or protection provided precludes any idea on the part of plaintiff to have deliberately and "wilfully" (as the word deliberate has been construed, Cole v. List & Weatherly Construction Co. [La. App.] 156 So. 88) failed to use any.

The other two points in the case present its most important phases, and on these we find ourselves in disagreement to some extent, with the learned trial judge.

We agree to the extent that the district judge found that plaintiff's left hand and forearm were left in such condition, as a result of his injuries, that he may well be said to have no use whatever of his left arm. It is unfortunate that the two physicians who attended the plaintiff at the time of his injury are both dead and the court is therefore deprived of their testimony, which undoubtedly would have been of valuable assistance. In the absence of such testimony it is necessary to have to rely on that of experts, three of whom testified for the plaintiff, all three by deposition, and three for the defendant.

Dr. C. E. Hamilton, Dr. M. M. Mouton, and Dr. J. O. Duhon, all three of Lafayette, are the experts for the plaintiff. They all seem to agree that the ulnar nerve, which we understand is the large nerve which passes from the inner side of the arm to the elbow, superficial blood vessels and several flexor tendons, were completely severed, and that the scar tissue has grown to these tendons which extend to the fingers and are used in closing the hand. The result is that plaintiff is unable to close his hand. In plainer language, as we understand, he has lost the grip in that hand. The tissues are soft, flaccid, and greatly atrophied; this condition extending to the left forearm as well as to the fleshy part of the left hand. Defendant's expert witnesses were Dr. Henry J. Dauterieve, Dr. Henry Allen King, and Dr. C. C. De Gravelle, all of New Iberia. Some express a little doubt that the ulnar nerve of plaintiff's forearm was severed, but all in all we gather the impression from their testimony that it is their opinion that the injury to the plaintiff's left hand is a serious one, agreeing with the other witnesses to the extent that he is unable to close his hand and that the atrophy they speak of is present. They maintain principally that his condition at present is due largely to his failure to have used the method of exercising his hand that was suggested to him; but we do not find their testimony on this point sufficiently convincing to hold that plaintiff would have had anything like near complete recovery had he availed himself of those suggestions. Besides, plaintiff testifies that he did try to take the exercises, but they produced no beneficial result.

Counsel for defendant contends that plaintiff has only shown a 40 per cent. loss in the use of his left hand and forearm, but we think that the preponderance of the testimony shows that he has very, very limited use if any, of his arm and hand. He demonstrated that fact before the lower court, to its complete satisfaction, and we can find no fault with its finding on this point.

With regard to the right hand, the situation is different. Plaintiff's own experts are not so positive in their assertion that the ulnar nerve in the right forearm was severed. The question propounded to Dr. Hamilton is, Was that nerve injured? and he answers that it was. Dr. Mouton was asked if it was severed, and he says, "Evidently so"; and Dr. Duhon, being asked the same question, answered, "Yes sir." The resulting impairment, however, even if we take the opinion of these doctors to be that it was severed, was not at all the same as in the left arm and hand. They all refer to the impairment consisting in the loss of tactile sensation along the ulnar side of the front of the forearm and the little finger and the ulnar side of the ring finger. In fixing the degree of disability in his right arm, Dr. Hamilton places it at 15 per cent. permanent partial, while Dr. Mouton says it is 10 to 20 per cent. Dr. Duhon was not asked to fix the degree of disability.

Drs. Dauterieve, King, and De Gravelle, defendant's witnesses, all three agree that plaintiff has a normal grip in his right hand. Dr. Dauterieve was asked if the impairment to the sensation of a part of the hand had any effect on its usefulness as a member, and he answers, "No." He is further asked, "What percentage of use would you say he has of his right hand and arm—normal or abnormal?" and he says in reply: "He has some cutaneous interference, but I would not say that he has anything else than a minus 100 per cent. arm and hand." Dr. Allen King seems to be positive that there was no severance of the ulnar nerve of the right forearm, basing this opinion on the hypothesis that the severance of the ulnar nerve usually results in a claw hand. Asked what effect he found to the functions of the right hand and arm as a result of the injuries received, he answers: "I find no effect as to mode of function." Dr. De Gravelle appears to be equally of the same opinion as Dr. Allen King that the ulnar nerve of the right arm was not severed. He says that "if the ulnar nerve was severed, you would have the same condition or a worse condition in this hand due to the fact that the nerve being severed higher up than in the left hand." When asked to state the condition of the right arm and hand, he answers: "I should consider the right hand and arm normal."

Our foregoing summary of the medical testimony with regard to the right hand and arm therefore indicates that the preponderance is rather on the defendant's side; certainly it is not with the plaintiff. In addition thereto, however, we find from the plaintiff's own admissions, that six months after he received the injuries to

his hands and arms, he was able to drive his automobile, and that since then also, he has performed such work as milking cows, making a garden, and repairing his fence, using a saw and nail hammer in doing the last-mentioned work. It strikes us, as laymen, that it requires almost normal use of one hand to engage in such occupations as these, and if, as has been found, plaintiff's left hand and forearm are of no use to him whatever, the inference must be that he had the normal use of his right hand in performing such tasks.

Our conclusion on the second point in the case therefore is that plaintiff's disability consists of the permanent total loss of use of his left hand and arm which really constitutes the total loss of the use of an arm. This conclusion makes it far less difficult for us to consider and decide the third issue which is with regard to the period of time plaintiff is entitled to receive compensation.

Because of the permanent total loss of the use of his left arm and hand and the serious impairment which he found in the right hand, the trial judge decided the plaintiff's case as one of total, permanent disability to do work of any reasonable character along the line of work which he was accustomed to do and he awarded him compensation accordingly, not beyond 400 weeks, however, as provided for by the statute. It seems apparent to us, having concluded that what the plaintiff has suffered was the loss of the use of a member of his body, the left arm, we have to be governed by the provisions of subparagraph 6 of paragraph (d) of subsection 1 of section 8 as qualified by subparagraph 14 of the amending Act No. 242 of 1928 (pages 357, 358) of the compensation statute. In view of the recent decision of the Supreme Court in the case of Calhoon v. Meridian Lumber Co., 180 La. 343, 156 So. 412, we have no alternative. The Court of Appeal for Orleans Parish has recently followed that decision in the case of McGruder v. Service Drayage Co., Inc., 158 So. 252. Under the provisions of the qualifying subparagraph 14 of the section of the act referred to, "a permanent total loss of the use of a member is equivalent to the amputation of the member," and under subparagraph 6 of paragraph (d) of the section, for the loss of an arm, the employee is entitled to compensation at the rate of 65 per centum of wages during 200 weeks. That, we hold, is what the plaintiff herein is entitled to receive, and we will so decree.

For the reasons stated, it is therefore ordered, adjudged, and decreed that the judgment appealed from be, and the same is hereby, amended by reducing the period of compensation as therein decreed from that as for full disability, not to exceed the period of 400 weeks, to the period of 200 weeks, and in all other respects the said judgment is affirmed. The costs of appeal to be borne by the plaintiff appellee.