## HARRIS v. SOUTHERN CARBON CO., Inc.
### No. 5037.

Court of Appeal of Louisiana.
Second Circuit.
June 29, 1935.

Theus, Grisham, Davis & Leigh, of Monroe, for appellant.

Dhu Thompson, of Monroe, for appellee.

DREW, Judge.

Plaintiff instituted this suit under the Workmen's Compensation Act of Louisiana (Act No. 20 of 1914, as amended), claiming compensation at the rate of $20 per week for a period not to exceed 400 weeks; and for $250 for doctors', hospital, and medical bills, alleging that he is totally and permanently disabled from following any gainful occupation, due to an injury to his foot which he received in an accident which occurred while he was employed by defendant company. He states for a cause of action the following:

"7. That the duties and employment of petitioner required and made it necessary for him to climb telephone poles and to use in climbing such poles, what is commonly termed and known as 'spurs', which are recognized as necessary implements or equipment of a telephone lineman.

"8. That such spurs are made of a flat piece of steel or metal extending from or even with the foot to just below the knees,

with a sharp pointed spur extending from the lower end of such flat piece of steel so that it may be forced into the side of the telephone pole by a sudden downward heavy movement of the leg and which spurs when so inserted in the pole, make it possible for the lineman to climb such pole and, by the insertion of such spurs, not only to climb such poles, but to support himself at or near the top of the poles while doing construction or repairing work on the lines supported by crossarms at or near the top of such poles themselves.

"9. That the steel portion of the spurs are firmly bound by two leather straps to the inner part of the leg, one of which is fastened just above the ankle while the other is fastened around the leg just below the knee.

"10. He shows that in the use of the aforesaid spurs it is necessary that the straps be tightly fastened around the leg at the locations mentioned.

"11. That your petitioner was furnished his spurs by the Southern Carbon Company as a part of his equipment and in order that he might perform the service required of him and for which he was employed.

"12. That along in the month of February, 1934, or thereabout, petitioner's left leg and heel were injured by the spur and strap attached thereto by the strap rubbing the skin and causing blisters to form which afterwards broke and from which a sore and infection developed and occurred; that in addition to breaking the skin and skinning petitioner's ankle, the strap also, due to the weight and pressure of petitioner's body resting thereon, injured the blood vessels in and around petitioner's left ankle and from which injuries petitioner became and is now totally and permanently disabled from doing any work of any reasonable character or nature whatsoever; his foot, ankle and leg being injured in stabbing and withdrawing the spurs from poles and resting his weight thereon, and which injuries and infections therefrom incurred in his work, have affected his entire system.

"That the injuries incurred and received by petitioner arose out of and in the course of petitioner's work and employment and while regularly employed by the defendant company in the course of its trade, business and occupation."

Defendant excepted to the petition, for the alleged reason it did not set forth a cause or right of action, which exception was overruled. It defends the suit on the alleged ground that the injuries plaintiff complains of were not caused by any accident occurring while he was in the employ of defendant; and in the alternative, if the court should hold that plaintiff is in any way disabled, said disability is trivial, is of no consequence, and does not prevent him from performing ordinary labor. This last alternative defense is not urged here, but defendant contends here that there was no accident and the injury to plaintiff's foot was due to an occupational disease.

The lower court awarded plaintiff judgment as prayed for, and defendant has appealed.

■ The defense set up on the exception of no cause or right of action is the same as the defense on the merits in many respects; however, the exception is not well founded. Seldom, if ever, is an exception of no cause of action sustained in a compensation suit, due to the fact that the rules of evidence and the rule of pleading are to a great extent done away with in such case, and are always construed most liberally in favor of plaintiff.

Plaintiff has alleged the employment and his duties, and that he was injured while acting within the scope and course of his employment. He likewise alleged in detail how the injury complained of was brought about. It therefore evolves itself into a question to be determined on the merits, and, in this case, is reduced to the question of whether the injury complained of was due to an occupational disease or to an accident within the meaning of the Workmen's Compensation Law of Louisiana.

It is admitted that defendant is engaged in a hazardous business, and, if plaintiff was injured by reason of an accident which arose out of and in the course of his employment, he is entitled to compensation.

■ Plaintiff had been employed as a telephone lineman for approximately 25 years. He began work for the defendant company in 1922, and continued in its employ until April 1, 1934, at which time he was disabled. His salary was $190 per month. His duties required him to construct, maintain, and repair telephone lines in several parishes, all of said lines being connected with the main plant of defendant, located at Fairbanks, La. Plaintiff had lost very little time from work on account of illness during the 12 years he was in defendant's employ. His work, as a lineman, required him to wear

what is commonly known as "spurs," with which to climb the telephone poles, and which were similar to those used by all telephone linemen. They consist of flat pieces of steel reaching from just below the knee to the ankle, on the lower end of which there is a sharp point projecting from the steel. The flat piece of steel is strapped around the leg just below the knee and just above the ankle. The sharp point on the lower part of the piece of steel extends outward from the leg, and, in climbing or descending a pole, the lineman through movements of the leg jabs the sharp point of the spur into the pole, first with one leg and then with the other, and in that manner descends or ascends the pole.

Plaintiff contends that in the latter part of February, 1934, he climbed a pole to replace a broken insulation, which required only five or ten minutes' time, and, when descending, the spur on the right foot broke loose from its hold on the pole, and, in order to prevent falling, he quickly and with much force jabbed his left spur into the pole, and, because of the sudden weight and the position in which he was placed, the lower strap on his left leg skinned the back of his leg, just above the ankle. Plaintiff paid very little attention to the wound, considering it of a trivial nature, and, upon going home, he washed the place and painted it with mercurochrome. He claims the place never healed, but gave him little or no trouble until after he was discharged. He did not think enough of the injury to report it as an accident, but contends that, after he left defendant's employ, his foot gradually grew worse, although he did not consider it seriously until about three and a half months thereafter, at which time he visited a doctor. At that time there had developed a horny growth on his heel near the point of injury. This horny growth was about one and a half inches long and from one and a half to two inches in diameter, at its base. The area around his ankle at that time had broken out in blisters. Plaintiff had his attorney demand compensation from defendant, and his demand was refused.

Plaintiff is corroborated by his wife as to the skinned place on the ankle, which he claims took place in the latter part of February. He also offered one friend, whose testimony, however, is of no value. He offered five doctors who had examined him, and the defendant offered three, so the case necessarily turns on the medical testimony. All the doctors for both plaintiff and defendant testify that plaintiff's foot was in such condition as to render it totally useless, and that, due to the condition of his foot, he was disabled from performing any labor or to follow any trade. Most of the doctors who testified for plaintiff are of the opinion that the injury, which plaintiff claims to have received in February was the cause of his present trouble. The other doctors are of different opinion, and, under all the medical testimony, it is our opinion that the alleged injury plaintiff claims to have received in February had little, if anything, to do with his present condition. However, under the testimony of either the doctors who testified for plaintiff or those who testified for defendant, we think plaintiff is entitled to recover, and we will accept as the true condition the testimony of the doctors for the defense.

There was a horny growth on the inside of plaintiff's left heel, as above described, and said growth, to be as advanced as it was, would have had to be in progress from one to two years. When he visited his doctor, it was removed, but soon thereafter began to grow back. It also became infected, and, some time during April, about three-fourths of it had become disconnected from the heel and was held on by the remaining fourth. The appearance underneath the growth indicated a cancerous condition and his lower leg had become very swollen. Each of plaintiff's doctors gives a different version of the cause for the condition. The doctors for the defense all agree, but, be that as it may, it is agreed on by all that the condition was caused by trauma, and we are of the opinion from the testimony that it was caused by trauma and friction of a continuous and progressive nature over a long period of time, caused by plaintiff's daily use of spurs in climbing poles. After the horny growth began, each time he jabbed his spur into a pole he was accelerating his then diseased condition, and, as testified to by the doctors for the defense, each time this was done it was a new trauma. The last time he ascended a pole, which was in April, 1934, was the last trauma to his diseased foot and accelerated the progress of the disease. No one could doubt, after reading the record, that the constant climbing of the poles, if it was not the direct cause of the horny growth, was the accelerating cause after the growth had begun and which has resulted in the loss

of use of the foot at the present time; and defendant does not at this time seriously contend to the contrary.

This being true, the main defense made is presented to us, viz., Is plaintiff's diseased foot due to an occupational disease or an accident within the intendment of the Workmen's Compensation Law?

■ An occupational disease is one which is not only incident to an occupation, but the natural, usual, and ordinary result thereof. In Schneider's Workmen's Compensation Law, vol. 1 (2d Ed.) p. 643, par. 223, we find the following definition of "Occupational Diseases": "'Occupation' has been defined by the courts of this (Ohio) and other states to be 'that particular business, profession, trade, or calling, which engages the time and efforts of an individual.' In other words, the employment in which one regularly engages, or the vocation of one's life. A disease contracted in the usual and ordinary course of events, which from the common experience of humanity is known to be incidental to a particular employment, is an occupational disease, and not within the contemplation of the Workmen's Compensation Law."

"Occupational Disease" is defined in 5 Words and Phrases, Third Series, page 547, as follows: "A disease contracted in the natural and ordinary course of employment, by a person engaged in a particular calling or occupation, which disease from common experience is known to be a usual and customary incident to such calling or occupation, is an 'occupational disease,' and not within the contemplation of the Workmen's Compensation Law (Act June 15, 1911 [102 Ohio Laws, p. 524]). Industrial Commission of Ohio v. Roth, 120 N. E. 172, 173, 98 Ohio St. 34, 6 A. L. R. 1463."

■ There is no evidence in the record to show or to intimate that the disease from which plaintiff is suffering is a natural, usual, or ordinary result of the occupation of a lineman, or that from common experience it is known to be a usual and customary incident to such a calling. There is no proof that any other lineman ever suffered with a like disease, and a search by us has failed to disclose a case anywhere in which such a disease was held to be a natural, usual, and ordinary result of such an occupation. There can be no doubt in this case about plaintiff's condition being caused by the work he performed, in constantly climbing poles, but it was not the natural, usual, and ordinary result thereof. It is the unusual thing to occur to one occupied as a lineman; and, in our opinion, the injury plaintiff received arose out of an accident within the meaning of the Workmen's Compensation Law of this state.

In the case of Connella v. Gulf Refining Company of Louisiana, 154 So. 406, the plaintiff, who was a painter, died of lead poisoning, and the First Circuit, Court of Appeal, held it not to be an occupational disease and allowed compensation—a much stronger case for the defendant than the one at bar.

■ The lower court found plaintiff to be totally and permanently disabled, and awarded him judgment for a period of not more than 400 weeks. In this respect the judgment is erroneous. The injury to plaintiff is localized in the foot and lower leg, all below the knee, and he is entitled to judgment for the loss of a foot only, or for 125 weeks. Calhoon v. Meridian Lumber Company, 180 La. 343, 156 So. 412.

There is no proof in the record to show injury to any other part of plaintiff's body. Although a diseased foot may be cancerous in nature, the record discloses it had not developed to a sufficient extent to affect any other part or member of his body, and it likewise discloses that, if the foot were amputated, the trouble or danger of further infection would be ended.

■ Plaintiff filed a rule in the lower court to fix the fees of the medical experts, five of whom were used by plaintiff and three by defendant. The lower court fixed the fees, but limited both plaintiff and defendant to two medical experts each. Plaintiff has appealed from this ruling, and asked that we correct the same so as to make it include all the medical experts. We have been cited to no authorities which would authorize the lower court to limit the number of medical experts receiving expert witness fees, and can readily see the injustice of such a ruling in effect. It is common knowledge that most of the plaintiffs in compensation cases are without financial means, and that the defendants, a greater part of whom are large corporations, carry insurance to protect them from loss in compensation cases. To allow such a ruling of the lower court to stand would mean that in most cases an impecunious plaintiff could only secure as witnesses two doctors, and the defendant, with financial means at hand, could get as many as desired. We

think the ruling of the lower court in this respect is erroneous, and the expert fees should have been allowed to each medical expert witness who testified in the case.

It therefore follows that the judgment of the lower court is amended by reducing the award of compensation from a period of not more than 400 weeks to a period of 125 weeks; and it be further amended by allowing the expert witness fees fixed by the lower court to all eight doctors who testified in the case; in other respects, the judgment is affirmed; cost of appeal to be paid by plaintiff.