## OGEA v. W. HORACE WILLIAMS CO. et al.
## No. 1537.

Court of Appeal of Louisiana. First Circuit.
Jan. 28, 1936.

Pujo, Bell & Hardin, of Lake Charles, for appellants.

Griffin T. Hawkins, of Lake Charles, for appellee.

OTT, Judge.

Plaintiff sues his former employer, W. Horace Williams Company, and its insurer, the Employers' Liability Assurance Corporation, for permanent total disability resulting from a hernia received by plaintiff on September 27, 1934, while working for the said Williams Company, and asks for compensation for 400 weeks at $12.48 per week, less a credit of $88.40. He avers that his said employer had him operated on for this hernia on October 16, 1934, and that he was discharged by the physician on the 27th day of November, 1934, as able to resume work, but that he suffered intense pain from the time of the operation, and so advised the operating physician; that he attempted to go back to work on the 30th day of December, 1934, for a man by the name of Burton, in loading and unloading piling, and worked 5 days, during which time he continued to have the pain in his side at the site of the operation; that he consulted physicians who advised him that he had a large hernia at the same place where he had been operated on for the hernia received by him September 27, 1934, while working for said Williams Company. He avers that he suffered no injury or accident while working for Burton.

Defendants admit that plaintiff was operated on for a hernia on October 16, 1934, but aver that the operation was successful and that plaintiff was discharged by the physician performing the operation;

that, if plaintiff had acquired another hernia, it was at a time when he was not working for the said Williams Company.

The trial judge first decided the case in favor of the defendants, but, on a rehearing, reversed his opinion and decided the case in favor of plaintiff, granting him compensation as he had prayed for in his petition. The defendants have appealed.

There are two questions to decide in the case: (1) Whether or not the hernia from which plaintiff is now suffering is a recurrence of the one which he sustained September 27, 1934, while working for the Williams Company; and (2) if so, the basis on which plaintiff's compensation is to be calculated.

1. That plaintiff suffered a hernia on September 27, 1934, while working for the Williams Company is not disputed, nor is it disputed that he was operated on for that hernia on October 16, 1934, and discharged by the physician on November 27, 1934, although the operating physician says that he advised plaintiff not to do hard work for two weeks after the discharge. Plaintiff did not return to work until December 30, 1934, which was some 75 days after the operation; therefore, whether plaintiff was told not to return to work for two weeks after the operation becomes of no moment. From the consensus of the opinions expressed by the physicians who testified in the case, the time in which a patient operated on for a hernia of this kind should wait before undertaking hard manual labor, is from 6 to 12 weeks. The plaintiff was operated on October 16, and went to work at manual labor, loading and unloading piling, on December 30, almost 11 weeks after the operation. Therefore, it cannot be· said that he went back to work in too short a period of time after the operation. Nor do we consider that a vital consideration in arriving at the cause of this recurrent hernia at the same spot as the former one, except as this fact has a bearing on other facts and circumstances which we consider more impressive.

Plaintiff testifies, and he is not contradicted in that testimony, that he sustained no injury, strain, or accident while working for Burton; nor does he know of any particular incident connected with that employment giving rise to a cause for a new hernia or a recurrence of the former one. A review of the medical evidence in the case shows that a hernia of this kind could only recur in the same spot as the former one for the reason that inguinal hernias only occur in this particular part of the body. These hernias recur after an apparently successful operation in from 3 to 5 per cent. of cases, without any special strain or injury.

Manifestly, if plaintiff relied on this rather small percentage of recurrences to prove that his present hernia is merely a recurrence of the first one, then the probabilities would be too strongly against him to form the basis of a judgment in his favor. But, in addition to this 3 to 5 per cent. probability of recurrence, there are other important considerations. One of these is the fact that plaintiff suffered pain in the locality of the operation continuously from the time that he was discharged as cured. The physicians testify that pain in the locality of the operation is a . sign that there is something wrong. This pain was present before plaintiff went to work for Burton on December 30th. True, the presence of pain does not necessarily mean that the operation was not a success. In fact, the success of the operation cannot be determined by an examination of the place where the operation was performed, but can only be determined after the patient has returned to work. If he is able to work within a reasonable time after the operation without a recurrence of the hernia, then the operation is said to be a success; if the patient is not able to do ordinary labor after a reasonable time without a recurrence, then the operation cannot be said to be a success.

The medical testimony further shows that there is likely to be a weakness in the parts where the operation is performed for some time. It stands to reason that the resistance of the tissue at the point of the incision would not be as great as before the operation until the healing was complete. In view of the fact that pain was present for some 75 days after the operation and before plaintiff attempted to work, we are of the opinion that the wound had not fully healed, rendering this spot more susceptible to a recurrence of the hernia at that point.

■ Our conclusion is that the hernia suffered by the plaintiff on September 27, 1934, while working for the defendant Williams Company is responsible for his present condition. Under this finding of fact we are impelled to follow the case of

Crawford v. Tampa Inter-Ocean S. S. Co., Inc. (La.App.) 150 So. 875, where the facts were almost identical with the facts in this case, and where the plaintiff was allowed a recovery for permanent total disability.

2. Plaintiff was earning 40 cents per hour for an 8-hour day. In the absence of allegations and proof of a special contract of hiring, the normal basis of compensation for an injured employee is to be calculated on a 6-day week. Rylander v. T. Smith & Son, Inc., 177 La. 716, 149 So. 434; Calhoon v. Meridian Lumber Co., Inc., 180 La. 343, 156 So. 412. On this basis plaintiff would be entitled to compensation at the rate of 65 per cent of a weekly wage of $19.20, or $12.48 per week.

Defendants contend that the compensation should be based on a 5-day week, as it appears from plaintiff's testimony that he was working only 5 days per week at the time of the injury; that he was then working under the NIRA Code, which has since been held unconstitutional. But the contention is made that the 5-day week should be made the basis of compensation regardless of the NIRA Code, for the reason that plaintiff testifies that he was working only 5 days per week. However, as defendants do not set up in their answer any special terms of employment, the court is not at liberty to consider any other than the normal 6-day week. As the normal week is 6 days, any contract changing the number of working days in the week would be a special defense necessary to be set up by a special plea. The lower court correctly fixed the weekly compensation at $12.48.

For the reasons assigned, the judgment is affirmed.