**ETIE v. OLIVIER et al.**

No. 1617.

Court of Appeal of Louisiana. First Circuit.

June 9, 1936.

A. Sidney Burns and C. V. Pattison, both of Lake Charles, for appellant.

McCoy, King & Jones, of Lake Charles, for appellee.

OTT, Judge.

Plaintiff sues his former employers, Herman Olivier and Harry L. Chauffe, together with their insurance carrier, Maryland Casualty Company, for compensation in the sum of $12.48 per week for 400 weeks, a total of $4,992, less a credit of $171.60. He claims permanent and total disability on account of a hernia suffered by him on July 30, 1935, while working for the above-named employers in tearing up a concrete walk with a sledge hammer. He alleges that he was receiving 40 cents per hour for an eight-hour day and a 6-day week.

He further alleges that he was operated on for said hernia on August 5, 1935; that he was discharged by his employers' physician as well on November 9, 1935, who instructed him to return to work; that he was unable to resume work, but attempted to do so on November 22, 1935, but, after making an effort to work for several days, he was unable to continue on account of severe pain in and near the place where the operation was performed.

He further alleges that he is informed and believes that in the course of said operation a nerve was either severed or caught in the scar tissue, causing severe pain when he attempts to work; that the area in the shape of a wedge below the scar where the operation was performed has become anesthetized and deadened.

The defendants set up three principal defenses, but these have been narrowed down by the evidence to one principal defense; that is, that the operation for the hernia was successful and plaintiff does not suffer any disability on account of the hernia sustained by him on July 30, 1935, while working for said employers nor by reason of the operation itself.

The district judge was of the opinion that plaintiff was "malingering" and dismissed his suit. Plaintiff has appealed.

It is not the contention of plaintiff that there has been a recurrence of the hernia for which he was operated on, nor does he claim that he now suffers with a hernia, complete or incomplete. He bases his claim for total permanent disability on the fact that, because of some nerve involvements at the site of the operation, he suffers intense and constant pain, which is aggravated when he attempts to work or otherwise exerts himself. The principal question brought to us for decision is whether or not plaintiff suffers such pain and discom-

fort as to prevent him from performing manual labor, and, if so, whether such pain and discomfort is a result of the hernia and operation therefor.

We are loathe to reach a conclusion which in effect, if not in words, stamps the plaintiff as a "malingerer," which appellation, as used in modern legal terminology, carries with it a rather opprobrious meaning. Nevertheless, we realize that in deciding such questions as to whether or not a person suffers pain, where the objective symptoms would not indicate the presence of pain, the trial judge has a decided advantage over us, inasmuch as he is able to observe, not only the demeanor and expressions of the person testifying in his presence, but he has the opportunity of knowing the reputation of such person, the background and circumstances under which he testifies, and his reactions to the questions propounded to him. In reading the testimony of plaintiff as it comes to us in the cold record, we cannot ascribe to him that innocent, illiterate frankness with which his counsel has pictured him, nor, on the other hand, do we find in his testimony that feigning, designing, and disingenuous sort of person as counsel for defendants would have us paint him.

Addressing ourselves to the question of the pain which plaintiff claims to suffer, we notice that he states the pain to be of three different kinds and in three different areas. He complains of a cutting pain in the site of the operation, which pain is more intense on exertion; a dull, constant pain just below the scar; and another pain in the left testicle as though something had struck it. He says the pain in the old scar of the operation hurts the worst. These pains, he states, prevent him from sleeping at night, making it necessary for his wife to get up several nights during the week and place an ice bag over the pain. His wife says he would wake up at night groaning and she would get up and put an ice bag on him once or twice a week.

Both plaintiff and his wife testify that he tried to saw wood, but the pain would get so severe that he was compelled to quit and sit down. His wife said that her husband would turn pale and grab his left side when these pains would strike him while trying to saw wood. While a witness on the stand, plaintiff was asked if he then had this stabbing pain in his side, to which he replied that it struck him about every five minutes. We judge from the questions then being asked him that the witness had his legs crossed while testifying. On being interrogated about this attitude, the witness answered that it relieved the pain. Later on he explained that what he meant about the pain coming on every five minutes was that the pain came on when he exerted himself. It is significant that some of the doctors who heard plaintiff when he gave his testimony stated in their testimony that, in their opinion, plaintiff was not suffering the pain which he claimed while on the witness stand.

After plaintiff was discharged by the employers' physician as cured and able to go to work on November 9, 1935, he went to New Iberia, as he says, to get a light job in his brother's kitchen. On failing to get this light work, he went to work for the Bayard Lumber Company doing carpenter work. He worked there for five or six days doing ordinary carpenter work without complaining of any pain. On November 27, 1935, while climbing a pole in the mill of this lumber company, he was noticed to have a frown on his face, turned pale, and appeared to be in severe pain. This is the testimony of the two Bayards for whom plaintiff was then working. They further testify that after five minutes or so, on going back to where plaintiff was working, they found him lying on the floor complaining of intense pain, pale and chilly. They took him to the hospital, where he stayed for a few days and came back to work and was then put on a job as night watchman. Plaintiff was on that job only one night, claiming that he had such great pain that he could not fire the boiler in the morning as was required of the watchman. He had not worked since up to the time of the trial in February, 1936, except in sawing a small amount of wood around his home, which he testified, as before stated, gave him pain.

Seven doctors testified in the case. Five were called by defendants and two by the plaintiff. There is very little difference in their testimony. Dr. Goldsmith, who performed the operation for the inguinal hernia on plaintiff's left side August 5, 1935, testified that the operation was a success and that he discharged plaintiff about 2 months after the operation; that he examined plaintiff a few days before the trial and found a certain amount of tenderness just below the old scar and some anesthesia in that area; the scar was firm and no adhesions; that, in his opinion, plaintiff was able to do the same kind of work as before the operation.

All of the other six doctors who testified in the case, and who examined plaintiff, state that they can find no objective symptoms which would cause the plaintiff to suffer the intense pain which he claims. They could find nothing wrong with the parts in which plaintiff claims to suffer the pain. Some of the doctors did find certain areas just below the old scar to be slightly deadened or anesthetized probably from a severed nerve, but that this should not cause any pain, and in the ordinary course of nature would disappear in from 3 to 6 months. None of the doctors could find any sign of a nerve caught in the scar tissue or in the suture, but they state that such a condition could exist, and, if so, it would probably cause some pain. But the doctors are unanimous, including the doctors called by plaintiff, that, if such a condition did exist, there would not be sufficient pain present to prevent the plaintiff from working. None of them could find anything about plaintiff's condition which would disable him from work.

From this summary of the testimony in the case we feel that it may be reasonably concluded that plaintiff does suffer some pain in the area of the old operation, but that he has greatly exaggerated the extent of this pain. From the unanimous opinion of the doctors who testified in the case, we are further justified in concluding that the pain which plaintiff has is not sufficient to disable him from performing manual labor, and that this pain will soon disappear.

■ Plaintiff must make out his case with legal certainty. This means that he must prove with legal certainty that he has such severe pain as to disable him from work, and that this pain is caused from the effects of the hernia operation as alleged in his petition. He has failed to make this proof by a preponderance of the evidence. We agree with the findings of the trial judge that plaintiff has failed to prove any disability after November 12, 1935, the date to which he was paid compensation.

■ However, we are in agreement with plaintiff on his claim that his compensation should have been based on $12.48 per week instead of $11.44 per week, the basis on which compensation was paid from July 30 to November 12, 1935. The fact that plaintiff has accepted compensation on an incorrect basis fixed by his employers does not prevent him from recovering the correct amount due when shown by the evidence.

Harrison v. Rathbone Lumber Co., Inc., 16 La.App. 207, 132 So. 797.

■ Plaintiff was earning 40 cents per hour for an eight-hour day. His normal week was 6 days, in the absence of allegations and proof of a special contract for a shorter week. No such special allegation and proof is made in this case, and the normal week of six days must apply. Ogea v. W. Horace Williams Co. et al. (La.App.) 165 So. 345.

Plaintiff was earning $19.20 per week, 65 per cent. of which is $12.48. From July 30 to November 12, 1935, a period of 15 weeks, his compensation amounted to $187.-20. He was paid for that period the sum of $171.60, leaving a balance due of $15.60.

For the reasons assigned, it is ordered that the judgment appealed from be affirmed in so far as said judgment rejects the demands of the plaintiff for compensation after November 12, 1935; it is further ordered that, in so far as said judgment rejects the demands of the plaintiff for additional compensation from July 30 to November 12, 1935, the same is hereby avoided, annulled, and reversed, and it is now ordered, adjudged, and decreed that plaintiff recover from the defendants in solido additional compensation for said period in the sum of $15.60, with legal interest thereon from November 12, 1935, until paid, and for all costs in both courts.