## WOOD & CO. et al. v. MAXWELL et al.

No. 23069. Opinion Filed May 17, 1932.

Clayton B. Pierce and Fred M. Mock, for petitioners.

Murrah & Bohanon and M. F. Boddie, for respondent.

KORNEGAY, J. This is a proceeding to review an award made by the Industrial Commission on the 22nd of October, 1931, which is as follows:

"Now, on this the 22nd day of October, 1931, the State Industrial Commission being regularly in session, this cause comes on for consideration pursuant to a hearing held on October 2, 1931, at Oklahoma City, Okla., before Chairman Thos. H. Doyle, and a subsequent hearing held, in Oklahoma City, Okla., on the 6th day of October, 1931, before Inspector Noble, duly assigned to conduct the said hearing. The claimant appeared in person and by his attorneys, Murrah & Bohannon, and the respondent represented by Clayton B. Pierce. The Commission after reviewing all of the records now on file and being otherwise well and sufficiently advised in the premises makes the following findings of fact, to wit:

"1. That the claimant herein, Luther Maxwell, sustained an accidental personal injury arising out of and in the course of his employment with the respondent company on or about the 25th day of February, 1931. That the nature of the said injury was a severe sprain to his back and side, and a blow over the mastoid process on the left side of his head, occasioned by his falling with a crate of oranges.

"2. That his average weekly wage at the time of the injury was $22.50 per week, making his rate of compensation $14 per week.

"3. That by reason of the aforesaid accidental injury the claimant herein was under the care and treatment of a physician from the 25th day of February, 1931, to the 4th day of May, 1931, and for which he has been paid compensation at the rate of $14 per week for nine weeks or a total sum of $126.

"The court further finds upon consideration of the foregoing facts that the claimant herein is now and has been, since the 25th of February, 1931, temporarily totally disabled from engaging in any occupation for gain and is in need of medical treatment.

"The court further finds that the claimant herein has sustained 50 per cent. permanent partial loss of hearing in his left ear as a result of the injury of February 25, 1931.

"The court is therefore of the opinion, upon consideration of the foregoing facts, that the claimant herein is entitled to an award for compensation from the 25th day of February, 1931, less the statutory five-day waiting period to the 10th day of October, 1931, and a continuing award for compensation until further order of this court.

"The court is further of the opinion that the claimant is entitled to the sum of $500 for serious and permanent disfigurement because of 50 per cent. partial permanent loss of hearing in the left ear.

"It is therefore ordered that the respondent and insurance carrier pay to the claimant compensation from the 25th day of February, 1931, less the statutory 5-day waiting period to the 10th of October, 1931, and less the 9 weeks' compensation heretofore paid, leaving a total of 22 weeks and 5 days at the rate of $14 per week, which would make a total sum of $323, and to continue to pay the claimant at the rate of $14 per week until otherwise ordered by the Commission or until the disability of this claimant has ended. And in addition thereto pay to the claimant the sum of $500 for serious and permanent disfigurement because of 50 per cent. permanent partial loss of hearing in the left ear.

"It is therefore ordered that within 15 days from this date the respondent or insurance carrier pay to the Commission the sum of $823 as accrued compensation from May 5, 1931, to October 10, 1931, and continue paying the claimant at the rate of $14 per week until otherwise ordered by the Commission and to tender the claimant herein further medical attention.

"It is further ordered that within 30 days from this date the respondent or insurance carrier file proper receipts evidencing compliance with the terms of this order."

The record shows that the attending physician, Dr. Townsend, sent in a report showing that claimant had received a severe sprain to the lumbar region of the back extending to the left side. "Muscles swollen over region of left lumbar, complains of pain when stooping or lifting. Has resulted in loss of weight. Back strapped in adhesive cast," and that he was still under treatment, and that his injury occurred from a fall while handling a crate of oranges. The date of this physician's report

is the 10th of April, 1931, and the accident occurred on the 25th of February, 1931.

The insurance carrier voluntarily paid compensation at the rate of $14 a week for a while. The employer's first notice of injury was received the 13th of March, 1931, and refers to Dr. Townsend as being the doctor. The employee's first notice of injury and claim for compensation was received March 17, 1931. The extent of the injury as there recounted was, "severe strain to back, causing neuralgia and loss of vision to both eyes, loss of hearing in both ears," and this was signed the 14th of March, 1931, the date of the accident being given as the 23rd of February, 1931.

The Commission set the matter down for hearing to determine the extent of the disability. A settlement was agreed on, but the Commission declined to approve it, and payment was made to the 4th of May, 1931, and demand was made for proof as to right to further compensation. On the 2nd of October, 1931, a hearing was had, and Dr. Buchanan, whose qualifications were waived, testified to examining the claimant and to his symptoms. There was a slight curvature of the spine to the right, especially in the region of where he was hit, and that he had lost weight after the accident, and that he had examined him on the day before he was testifying.

They could find no evidence by bony pathology, and there was some "dry friction rales in the mediastinal space." He made the deduction of the inability of the man to work, and the need of treatment, and in view of the man's condition before and after the accident, in the light of his examination, he attributed the disability to the injury, and with' reference to having used the Wasserman test he stated he had not, and that history, as given him by the claimant, was that of being hit on the back and shoulder by the box of oranges when he fell, and he stated that the spine curvature might be the result of the blow. He recommended X-raying and placing him in a hospital where he could be looked after.

The claimant detailed how it had happened, and that he was engaged in unloading some oranges, and while handling one of the boxes on his shoulder he stumbled and fell about four feet and the box hit him on the shoulder, which showed blue. He described his symptoms and treatment, and present condition, and pain and inability to do any work, and his having earned no money since the accident happened, though he had opportunity to have worked, had he been able to do so. He detailed about a knot and soreness on his head and treatment

for it, and about ear trouble now, but having had no trouble before, and his daily wages were $3.50, and he was asking for medical treatment also. On cross-examination he stated he had been treated by Dr. Townsend and examined by Dr. Moore and Dr. McBride.

Dr. Shelton was examined and he detailed the history of the case as given to him by the claimant, and the loss of hearing, and he claimed loss of hearing in the left ear to the amount of 58.6 per cent., and in the right ear 8.8 per cent. He used the audiogram to so determine. However, a part of it might be attributed to a catarrhal condition, and after making allowances for the loss of hearing in the left ear by reason of that condition, he thought that the injury made a 50 per cent. permanent loss.

He was cross-examined with reference to a blow on the mastoid bone as being the cause of the loss of hearing, and as to the effect of syphilis in a case of this kind.

At a hearing held on the 9th of October, 1931, Dr. Goldfain appeared on behalf of the petitioners, and he detailed his examination in connection with some of the doctors of the claimant, and what a chiropractor had told the claimant, according to the history given him by the claimant. He testified about alleged pain in the chest, and dry rales in the lower lobe of the left lung, and he did not think that the accident caused the trouble, but it was the result of systemic syphilis, in view of the Wasserman test being 4 plus, and low blood pressure. His diagnosis was that it was not the accident that caused claimant's trouble, and he was questioned on the theory of the injury aggrevating the syphilis. He claimed that the chest pains were not caused by the accident, but by syphilis or chronic bronchitis. Normally he should have been well in about four to six weeks.

Dr. L. M. Westfall made an examination and conducted some experiments with reference to his hearing, but did not think the loss was the result of the injury and attributed none of his defects to the injury, and attributed the loss of hearing to catarrhal deafness.

Dr. McBride testified as to examining the claimant May 20, 1931, and his claims of pain, and of the physical examination he made of the lungs and chest and blood pressure and spine, and he thought he should have been able to have gone back to work, and he could not find anything resulting from the injury to which to attribute the pain complained of. He had not seen the man since May. He thought the injury was

trivial, and he did not attribute any of his troubles to the injury.

Upon this evidence the order was made, $500 being for loss of hearing in the left ear. In one place the award refers to serious and permanent disfigurement, though it is very evident that the $500 award was intended by the Commission to, and did, cover the loss of hearing in the left ear. The other portion of the award was for temporary total disablity at the rate of $14 a week, dating from the 25th of February, 1931, and deducting the amount already paid, and subject to further orders of the Commission.

A brief has been filed on behalf of the petitioner that discusses and objects to the award under three propositions. The first is that the statute fixes the method of computing the average wage of the complainant, and that where the testimony introduced is in complete harmony on the question of wages earned previous to the injury, the Commission is bound to follow the law and the evidence, and any departure therefrom will necessitate a remanding of the cause by this court.

The testimony of the plaintiff was that he received a daily wage of $3.50 a day. In the employer's report of initial compensation for the injury, it appears that the average daily wage was $3.50, and that for the six days period, from March 3rd to March 9th, a payment of $14 was made for temporary total disability.

In the employer's first notice of injury it is stated that the average earnings per day was $3.50, and it was paid on a semi-monthly basis. In the employee's report the average weekly wage was given as $22.50. The Commission, under these conditions, fixed the amount at $14 per week, apparently without any suggestion from the petitioners of its being too large. Under the 300 times a day rule, as demonstrated in the petitioner's brief, the award would be too large per week by 54 cents. Figuring, however, on a weekly rate of 6 days to the week, the weekly wages would be $21. As applied to the present case, during the entire hearings the employer construed the wage scale as entitling the claimant to compensation at $14 per week. The Commission so fixed it. Figuring six working days to the week, and a semi-monthly settlement. it is clear that $21 a week would be the amount that would be the earning capacity of the claimant, and two-thirds of this would be $14.

We are not prepared to say that, under the conditions here existing, had there been no construction by the employer as to

what was coming, the Commission would have committed error, as applied to this particular case, in allowing two-thirds of what was actually being earned per week at the time of the injury.

Under proposition 2, it is urged that expert medical testimony, in order to support an award, must be based upon more than a casual examination of the claimant, and further, that if it is proven that the claimant was suffering from a condition that could cause his disability, and the expert's testimony in the claimant's interest did not know of such condition, then such testimony will not support an award, and the award based on such testimony will necessarily fail for lack of proof. As applied to this case, apparently, there was much expert testimony leading to the proposition that the man's condition of helplessness was the result of antecedent disease, while other experts reasoned that the accident caused the trouble. Apparently, from the medical reports, up to the time of the injury the man was an able and willing worker. Afterwards, according to the weight of the testimony, he was not able to work, and the point at issue was whether or not the accident had brought about that condition of disability, operating of itself or in conjunction with a syphilitic condition existing prior thereto. The Commission resolved the doubts in favor of the claimant and held the disability resulted from the accident. Under these conditions, and the presumptions that attend the findings of the Commission, we should not disturb their finding as to the temporary total disability and the allowance therefor.

Proposition No. 3 is as follows:

"An award of the Industrial Commission, granting a claimant compensation for serious and permanent disfigurement because of loss of hearing is contrary to the letter and spirit of the Compensation Law and must necessarily be reversed."

The complaint is made that the loss of hearing was attributable to something else than the blow against the mastoid bone, and complaint is also made of the language used by the Commission in making the award for the loss of hearing. An inspection of the record and the testimony makes it clear that the award of $500 was actually made for the loss of hearing, and there was evidence that would support it, though at the same time there was evidence indicating that this loss of hearing was feigned, and that it came from other conditions than that of the blow on the mastoid bone. However, the Commission resolved this contention against the petitioner, and it was a question of fact, and

they were the triers of the facts under the law, and we are bound thereby if there was any evidence reasonably tending to support it.

Finding no errors of law, and that the findings of fact are supported by evidence, the award of the Commission is affirmed.

CLARK, V. C. J., and HEFNER, CULLISON, SWINDALL, and McNEILL, JJ., concur. LESTER, C. J., and RILEY and ANDREWS, JJ., absent.