## RUSSO v. SOUTHERN KRAFT CORPORATION.*

### No. 4331.

Court of Appeal of Louisiana. Second Circuit.

Dec. 16, 1932.

Madison, Madison & Fuller, of Bastrop, for appellant.

Shell, Hawthorne & Files, of Bastrop, for appellee.

DREW, J.

Mary Russo, individually, and as natural tutrix for her two minor children, sued for compensation for the accidental death of her husband and father of the two minors. She alleged that her husband, while working within the scope of his employment at the Louisiana mill of the Southern Kraft Corporation, sustained an injury, due to accident, on January 23, 1932, which resulted in his death on February 13, 1932. She further alleged that at the time of the injury her husband was working six hours per day, for 7 days per week, and was receiving as wages 54 cents per hour. She prayed for judgment for 65 per cent. of his weekly wage, based on a 7-day week, for 300 weeks, plus medical and funeral bills.

Defendant admitted liability for the injury and all other allegations of the petition, with the exception of the allegation that she was entitled to base the weekly pay upon a 7-day week, and averred that the deceased was employed to work 6 days a week, and that the compensation should be based on 65 per cent. of his daily wage, multiplied by six, the usual number of working days per week and the number of days per week deceased was employed to work. This is the only point of contention in the case.

The lower court based its judgment upon a 7-day working week, and defendant has appealed to this court.

The defendant corporation owns several paper mills in and near the vicinity of the mill known as the "Louisiana mill," at which plaintiff was working at the time of injury. Due to economic conditions causing a slack in business, defendant, a short time prior to January 1, 1932, had closed down one or two of its mills, and, in order to prevent throwing a number of men out of employment, had reduced the shift hours at the remaining mills from eight hours per day to six hours per day, thereby working four shifts every twenty-four hours, instead of three shifts, as had been done theretofore. It transferred its employees from the closed down mills to those still operating and put them to work, some at the same jobs and some at different jobs. Deceased was given a different job from the one he had prior to closing down the Bastrop mill, where he formerly worked. The new job was for six hours per day, instead of eight hours per day, and the rate of pay per hour was less than when he worked at the Bastrop mill, which had been closed down.

Deceased went to work on this job on January 7, 1932, and was injured on January 23, 1932, just 16 days after he had begun work at the Louisiana mill, where he had been transferred. During that 16 days he had worked every day, including the two Sundays that intervened, and it is principally on this fact that plaintiff is contending for the 7-day week.

The record discloses that defendant's mills, including the Louisiana mill, did not regularly operate 7 days a week, and for the year prior to the accident they had operated on Sundays on a small per cent. of the Sundays in the year. Whenever they had a rush order for paper, it became necessary to operate on Sundays; otherwise they operated only 6 days per week. Instead of it being the usual thing to operate on Sundays, it was the unusual. Also it shows that, when business was dull, the mills were often operated a lesser number of days than 6, and at times were shut down for a period of several weeks. The record also discloses that the contract of employment with deceased, as well as with other like employees, was for so much per hour, and no specific number of days per week was included in the contract of hiring. Whenever defendant intended to operate its mill on Sunday, it was necessary for the employees to be notified on the day before, and they were on such occasions always notified. It was also optional with the deceased, as well as any other employee, whether he worked on Sunday or not. If the mill was operated on Sunday, and he wanted to work on Sunday, he could. If he did not want to work on Sunday, he did not have to, and his

failure to work on Sundays in no way affected his job. To the contrary, he was expected to be on hand 6 days per week, if the mill ran. It is also in the testimony, without contradiction, that, if an employee worked on Sunday, he was privileged to lay off one other day during the week. Several superintendents in the mill whose duty it was to employ men testified that, when they employed a man, they expected him to be ready to work 6 days a week and no more. There was clearly no specific employment to work 7 days per week, nor was an employee required to hold himself in readiness to work 7 days a week. It was purely optional with him if he worked 7 days, and, furthermore, he only had that privilege occasionally, as the mill was operated only a small per cent. of the Sundays during the year.

In the case of Ed L. King v. American Tank & Equipment Co., 144 So. 283, 289, this court, in dealing with a similar question, said: "An employee who is accidentally hurt, and whose case comes under the provisions of the Louisiana Compensation Act, is entitled to compensation based upon his daily wage, multiplied by six, the usual number of working days per week, whether he was employed for a lesser number of days or not, and only in such cases as where he is employed actually and specifically for seven days a week is he entitled to more than six days a week."

What is actual and specific employment must be construed from the facts of each case, dependent to some extent upon the rule and custom of the employer as to the working days per week in that particular employment. If the usual custom of the employer is to work 7 days per week, and the employees are expected and required to work each and every day, a different situation would arise. But we are not faced with that situation at this time. It was not defendant's rule or custom to operate its mills 7 days per week. It was unusual for it to do so, and only when an emergency arose.

Deceased had exercised his option of working on Sundays the two Sundays preceding the accident, and he might not have exercised that option again during the whole year, and he might not have had the opportunity to do so. He was not required to work on Sundays if he did not want to, and his failure to work on Sundays in no way affected his job. He did not have to hold himself in readiness to work on Sundays. His employment was for 6 days a week.

Section 8, subsec. 3, of Act No. 20 of 1914, as amended by Act No. 216 of 1924, has no bearing upon the number of days per week on which to base compensation. It merely defines "wages" to mean the daily rate of pay at the time of injury.

The lower court awarded judgment for $14.74 per week for 300 weeks, basing the compensation on a 7-day week. This amount will have to be reduced to $12.64 per week, as based on a 6-day week.

It is therefore ordered, adjudged, and decreed that the judgment of the lower court wherein it awarded compensation to plaintiff in the sum of $14.74 per week be amended by reducing the amount to $12.64 per week, and, as amended, the judgment of the lower court be affirmed; costs of appeal to be paid by appellee.

McGREGOR, J., dissents.