Ramón Montaner, en su carácter de Administrador del Fondo del Seguro del Estado, recurrente, *v.* La Comisión Industrial de Puerto Rico, compuesta por los Sres. Manuel León Parra, Presidente, F. Paz Granela y Juan M. Herrero, Comisionados Asociados, recurrida, y Fructuoso Serrano, obrero peticionario apelante ante la Comisión Industrial.

Núm. 10.—*Sometido:* Mayo 17, 1937.   *Resuelto:* Julio 16, 1937.

*Hon. Procurador General B. Fernández García, Emilio de Aldrey, Subprocurador* y *Luis Negrón Fernández,* abogado del Fondo del Estado, abogados del recurrente; *M. León Parra,* abogado de la recurrida; *Hartzell, Kelley & Hartzell* y *Rafael O. Fernández,* abogados del patrono, interventor;

EL JUEZ ASOCIADO SEÑOR TRAVIESO emitió la opinión del tribunal.

El obrero Fructuoso Serrano compareció ante la Comisión Industrial de Puerto Rico alegando que el día 24 de septiembre de 1936, mientras trabajaba en el muelle de su patrono The New York & P. R. SS. Co. sufrió una lesión en el dedo pequeño de la mano izquierda, y se quejó de que durante el período de su incapacidad para el trabajo, el administrador del Fondo del Estado le liquidó sus dietas a base de semanas de seis días, en vez de siete días.

Por resolución del día 5 de marzo de 1937 la Comisión resolvió que el obrero Fructuoso Serrano tenía derecho a recibir como compensación semanal ''la mitad del jornal que percibía el día del accidente, durante los siete días que constituyen una semana, por el período que estuvo incapacitado para trabajar, no excediendo esta compensación semanal de diez dólares de acuerdo con el inciso 2 del artículo 3 de la Ley 45 de abril 18 de 1935.'' El 13 de marzo solicitó el administrador del Fondo del Estado la reconsideración de dicha resolución, y el 17 del mismo mes le fué denegada, por lo que ha radicado ante este Tribunal Supremo una solicitud de revisión.

■ El párrafo segundo del artículo tercero de la Ley núm. 45 de 18 de abril de 1935 (Leyes de 1935, (1) pág. 251) provee el pago de compensaciones a obreros por incapacidades de carácter temporal o transitorio, en la forma siguiente:

''INCAPACIDAD TRANSITORIA.—2. Si la incapacidad fuere de carácter temporal o transitoria a una compensación de la mitad del jornal que percibía el día del accidente, o que hubiere de percibir a no ser por la ocurrencia del accidente, durante el período de incapacidad para el trabajo, pagadera por semanas vencidas. El período de tal pago no excederá en ningún caso de ciento cuatro (104) semanas; *Disponiéndose,* que en ningún caso se pagará más de diez (10) dólares ni menos de uno y medio (1½) dólares semanales; *Y disponiéndose, además,* que no se concederá compensación alguna por

los primeros siete (7) días subsiguientes a la fecha en que el obrero o empleado se presente al médico para recibir tratamiento.''

Para regular el pago de esas compensaciones a partir del día 10 de agosto de 1936, el administrador del Fondo del Estado dirigió a sus subalternos, los jefes de reclamaciones, de la división médica y de contabilidad, una orden que transcrita literalmente dice así:

''Aquellas compensaciones por incapacidad parcial transitoria, o sea dietas, así como compensaciones por inapacidad parcial permanente y total permanehte que tengan como base el período de incapacidad para el trabajo, serán graduadas y otorgadas a base de los 6 días laborables de una semana, excepto en aquellos casos en que habiendo mediado un convenio expreso de servicio por los 7 días de la semana, resulte evidente que el obrero lesionado estuvo incapacitado para trabajar durante tal período.''

De los autos originales que han sido elevados aparece que el día 24 de septiembre de 1936, Fructuoso Serrano ganaba un jornal de treinta centavos por hora que multiplicado por ocho horas diarias de trabajo, subía a $2.40 *per diem*. A tenor de lo dispuesto por el administrador en su regla ya citada, Serrano recibió una compensación semanal de $7.20 durante el período de su incapacidad, o sea la mitad del jornal que percibía el día del accidente, a razón de seis días en semana. Pero él sostiene que tenía derecho a dietas durante los siete días de la semana porque su caso está comprendido dentro de la excepción contenida en la orden del administrador, pues entre las compañías navieras y la Unión de Marinos Número 1 de San Juan, de la cual él forma parte, existe un convenio colectivo, copia impresa del cual fué admitida por la Comisión en evidencia, que le obliga a trabajar durante los siete días de la semana, o a estar listo para trabajarlos en caso de ser requerido para ello. Reclama, por tanto, las dietas dejadas de percibir, a saber, la diferencia entre $8.40 —cantidad semanal que alega tenía derecho a percibir—y $7.20,—cantidad que semanalmente recibía,—por el número de semanas que duró su incapacidad. El recurrente entiende

que al así decidir el caso la Comisión, incurrió en los errores que a continuación se transcriben:

"*Primero.*—La Comisión Industrial cometió error al entrar a considerar y al invalidar la regla general del Administrador del Fondo del Estado en cuanto a la forma de computar las compensaciones por incapacidad transitoria (*dietas*), ya que en ningún momento fué dicha regla impugnada por los apelantes, sino que por el contrario, fué confirmada por éstos al alegar estar incluídos en la excepción que dicha regla reconoce para aquellos casos en que un obrero trabaja los siete días de la semana debiendo dicha resolución contraerse y limitarse a resolver la cuestión planteada por los apelantes y que constituyó el punto en controversia (*issue*) del caso, tal como aparece de las alegaciones (*pleadings*) de ambas partes.

"*Segundo.*—Sin hacer renuncia de la cuestión planteada en el primer señalamiento de error, y asumiendo (lo que siempre se niega) que la Comisión actuara dentro de su jurisdicción al dictar la resolución de referencia, ésta es errónea y contraria a derecho en tanto en cuanto se refiere a, y con relación al pronunciamiento de que todas las compensaciones semanales por incapacidad total transitoria (dietas) deben computarse a base de los siete (7) días que componen una semana natural, toda vez que dicha compensación debe computarse de acuerdo con la ley, a base del período de incapacidad para el trabajo, por lo cual la unidad para tal cómputo debe ser la semana de trabajo consistente de seis (6) días laborables, y no la semana natural.

"*Tercero.*—La Comisión cometió error al resolver que Fructuoso Serrano tiene derecho a recibir compensación (dietas) a base de los siete (7) días de la semana, porque, no trabajando efectivamente (*actually*) dicho obrero los siete días, no está incluído en la excepción establecida por el administrador en su regla; y el Convenio Colectivo existente entre la 'Unión de Trabajadores de Muelles' y el patrono no puede surtir tales efectos."

La Comisión Industrial de Puerto Rico llegó a una correcta resolución del caso, pero los fundamentos que sirven de base a su decisión son erróneos y están en conflicto con la ley y la jurisprudencia. Por eso creemos que es nuestro deber discutir los errores señalados y resolverlos de manera que quede sentada de una vez la interpretación que debe darse al estatuto.

Dice la Comisión que, a su juicio, "no se requiere que haya un convenio entre obrero y patrono disponiendo que el obrero tiene que trabajar los siete días de la semana para que el obrero tenga derecho a recibir su compensación semanal de la mitad del jornal que ganaba al día del accidente y durante el período de incapacidad para el trabajo durante los siete días de la semana natural. Entendemos que si el obrero trabaja dos o tres días en una semana y como consecuencia de un accidente se incapacita para continuar trabajando, el mismo tiene derecho a recibir durante siete días que constituye la semana, la mitad del jornal que recibía a la fecha del accidente." La Comisión basa su interpretación del estatuto en la siguiente argumentación:

"*Primero.*—Al no definir la ley la palabra 'semana,' debe entenderse que quiso el legislador darle aquel significado que le da el diccionario de la Lengua Española de la Real Academia (décimoquinta edición), a saber: 'Serie de siete días naturales consecutivos, empezando por el domingo y acabando por el sábado.'

"*Segundo.*—En que el mismo inciso segundo del artículo 3 dispone que el obrero tendrá derecho a compensación 'durante el período de incapacidad para el trabajo.'

"*Tercero.*—En que el inciso 2 del artículo 3 de la ley fija el período de espera (*waiting period*) en siete días, así: '... *Y disponiéndose, además,* que no se concederá compensación alguna por los primeros siete (7) días subsiguientes a la fecha en que el obrero o empleado se presente al médico para recibir tratamiento.'

"*Cuarto.*—En que es de equidad que el obrero reciba compensación por siete días, porque esto 'cubre no sólo todos los derechos de acción que corresponden al obrero lesionado, sino que esa compensación cubre también el sufrimiento, así como la pérdida de salario,' y este sufrimiento 'no puede limitarse a seis días en una semana para recibir compensación, por el hecho de que él no hubiese trabajado nada más que seis días en la semana'."

Examinemos las disposiciones de la ley que ha tomado la Comisión como índices de la intención legislativa. En cuanto a la primera, podría admitirse a los efectos de esta argumentación, que la palabra "semana," usada en la frase "pagadera por semanas vencidas," significa, sin resolverlo, "serie

de siete días consecutivos . . .'' etc. La única luz que con ello recibiríamos sería con relación a una frase que dispone *cuándo* han de efectuarse los pagos por compensación y no durante *cuántos* días a la semana tiene el obrero derecho a recibirla. En otras palabras, el obrero puede recibir cada siete días vencidos, la compensación a que se refiere la ley, computada a razón de seis días en semana. Aun aceptando la definición que de la palabra ''semana'' da el diccionario, no encontramos que exista relación alguna entre el número de días compensables y el momento de efectuarse los pagos que nos haga concluir que porque éstos se hagan cada siete días deba también compensarse igual número de ellos (*Rylander* v. *T. Smith & Son, Inc.*, 149 So. 434). La solución debemos buscarla en la frase ''. . . a una compensación de la mitad del jornal que percibía el día del accidente . . . durante el período de incapacidad para el trabajo,'' y no en la sugerida por la Comisión, que nada tiene que ver con la controversia según ha sido ésta planteada.

La última parte de dicha frase fué considerada por la Comisión como interpretativa del número de días compensables, pero en vez de servirle de pauta para fijar en seis el número de aquéllos, le sirvió para resolver, equivocadamente a nuestro juicio, que aun en ausencia de un convenio para trabajar siete días, el obrero tiene derecho, en caso de incapacidad de carácter temporal o transitoria, a compensación durante los siete días de la semana. Veamos por qué es equivocada esa interpretación. De los siete días de que consta la semana, sólo seis son laborables. Ello no obstante, y como excepción, hay industrias en que también se trabaja los domingos. Cuando el obrero sufre una incapacidad de carácter temporal o transitoria, tiene derecho a una *compensación* de la mitad del jornal que percibía el día del accidente, o que hubiera de percibir a no ser por la ocurrencia del accidente, durante el período de incapacidad para el trabajo. *Compensar*, en su primera acepción, según el diccionario de la Lengua Castellana, décimosexta edición, quiere decir

"Igualar en opuesto sentido el efecto de una cosa con el de otra." En su segunda acepción, "Dar alguna cosa o hacer un beneficio en resarcimiento del daño, perjuicio o disgusto que se ha causado." Si la incapacidad ocurre en una industria que guarda el domingo como día de descanso, resulta que el obrero sólo está incapacitado seis de los siete días de que consta la semana, porque el séptimo no hubiera podido trabajarlo aun sin estar incapacitado. En esas circunstancias, de tener derecho a paga durante siete días, no sería, como exige la ley, una *compensación* lo que recibiría. No es como consecuencia de la incapacidad que queda el obrero privado de trabajar siete días; no se le estaría resarciendo de un daño, perjuicio o disgusto.

En igual sentido abunda la jurisprudencia. En el caso de *King* v. *American Tank & Equipment Corporation*, 144 So. 283, 289, la Corte de Apelaciones de Louisiana (Segundo Circuito), se expresó así:

"Un obrero que se incapacita accidentalmente y cuyo caso cae bajo los preceptos de la Ley de Compensaciones de Louisiana, tiene derecho a compensación basada sobre su jornal diario multiplicado por seis, generalmente el número de días laborables en la semana, haya estado o no empleado por un número de días menor y tan sólo en aquellos casos en que real y efectivamente ha estado empleado durante siete días a la semana es que tiene derecho (a compensación) por más de seis días a la semana."

El Juez Ott, de la Corte de Apelaciones de Louisiana, Primer Circuito, dijo en la opinión del caso de *Ogea* v. *W. Horace Williams Co.*, 165 So. 345, 347:

"El demandante ganaba 40 centavos por hora por días de ocho horas. En ausencia de alegación y prueba de un contrato especial de arrendamiento (de servicios) la base normal de compensación para un obrero incapacitado debe calcularse a razón de seis días en semana. *Rylander* v. *T. Smith & Son, Inc.*, 177 La. 716, 149 So. 434; *Calhoon* v. *Meridian Lumber Co., Inc.*, 180 La. 343, 156 So. 412. Sobre esa base el demandante tiene derecho a compensación a razón de 65 por ciento de un jornal semanal de $19.20, o sea $12.48."

"Sostienen los demandados que la compensación debe basarse en semanas de cinco días, ya que del testimonio del demandante aparece que estaba trabajando sólo cinco días en semana cuando se incapacitó; que trabajaba entonces bajo el código de la N.I.R.A., que fué declarada inconstitucional. Pero se alega que la semana de cinco días debe hacerse la base de compensación independientemente del código de la N.I.R.A. por la razón de haber declarado el demandante que sólo trabajaba cinco días por semana. Sin embargo, como los demandados no han aducido en su contestación condición especial alguna de empleo, la corte no se siente en libertad de considerar ninguna otra que la normal de seis días en semana. Como la semana normal es de seis días, cualquier contrato que varíe el número de días laborables en semana, será una defensa especial y deberá ser alegada especialmente. La corte inferior fijó correctamente la compensación en $12.48 semanales."

En *Reynolds* v. *Forcum-James Co.*, 162 So. 211, se computó la compensación del obrero a base de seis días en semana.

"La demandada . . . alegó que la suma que realmente adeudaba al demandante no era la de $10.50 como él sostenía, sino la de $6.82 . . .

"Con relación a la cantidad adeudada al demandante por compensación, encontramos que a Bennie Reynolds se le pagaban 17½ centavos por hora, por días de 10 horas, o sea $1.75 al día; que algunas veces trabajaba durante la noche, por cuya labor nocturna recibía una compensación similar. Pero su salario diario era de $1.75, o sea $10.50 semanales, y bajo la ley de compensaciones tiene derecho a percibir el 65 por ciento de esa suma, a saber $6.82 por semana. Ley núm. 20 de 1914, sección 8, subdivisión 3, según fué enmendada por la Ley núm. 216 de 1924 (pág. 114); *Rylander* v. *T. Smith and Sons, Inc.* (La. App.) 145 So. 64; Id., 177 La. 716, 149 So. 434; *Preston* v. *Ramoneda Bros.* (La. App.) 152 So. 81."

Véanse a los mismos efectos *Russo* v. *Southern Kraft Corp.* (La. App.) 144 So. 764 y 71 Corpus Juris página 796, sec. 520, donde se dice que:

"Aunque la base es generalmente una semana de seis días, a pesar de que el obrero haya estado empleado por un período más corto, puede ser una semana de siete días cuando real y efectivamente esté empleado para trabajar siete días."

Obsérvese que la ley de Louisiana, como la nuestra, basa la compensación a que el obrero tiene derecho en el jornal que percibía el día del accidente. De ahí que hayamos citado, con preferencia a otras, decisiones de dicho Estado. Pero como dice el recurrente, aun en los estados cuyas leyes hacen depender la compensación del promedio semanal de jornal, éstas se computan a base de semanas de seis días. Véase: *Wood & Co. et al.* v. *Maxwell et al.,* (Oklahoma) 11 P. (2d) 524.

Lo anterior nos lleva a la conclusión de que la compensación del obrero está limitada a los seis días laborables de una semana, excepto en aquellos casos en que media un convenio para trabajar los siete. La regla del administrador del Fondo del Estado se ajusta a la doctrina establecida por la jurisprudencia de otros estados con estatutos similares a los nuestros, jurisprudencia que por parecernos sana y justa creemos debe establecerse también en esta jurisdicción. La Comisión debió acatar y hacer efectiva dicha reglamentación.

No es óbice para ello que el inciso segundo del artículo tercero de nuestra Ley de Compensaciones por Accidentes del Trabajo fije el período de espera (*waiting period*) en siete días. Esa disposición no es en forma alguna indicativa del número de días compensables en semana. Ese período varía en las diversas leyes sobre el particular, y fluctúa entre 3 días y 3 semanas. Schneider, "The Law of Workmen's Compensation," vol. 2, pág. 1330, sec. 399. Su propósito es impedir que obreros poco escrupulosos, so pretexto de una lesión insignificante o imaginaria, obtengan algunos días de vacaciones a media paga. La misma obra, página 1331. Como puede verse, sería absurdo tomar tal disposición como índice del número de días compensables.

■ Cree la Comisión que el sufrimiento de un obrero no puede limitarse a seis de los siete días de una semana, por lo que sería justo y equitativo que en casos de incapacidad reci-

biera compensación por todos. Es muy humano pensar así, pero no debemos olvidar que la Ley de Compensaciones por Accidentes del Trabajo no tiene como base el sufrimiento de un obrero a los efectos de la compensación, sino la mitad del jornal que percibía el día del accidente, cubra o no aquél todos los efectos de la incapacidad.

". . . La ley de compensaciones a obreros no es un estatuto que concede *daños* al obrero por lesiones sufridas en el curso de su empleo a pesar de la culpa o negligencia de su patrono. Es esencialmente un seguro contra pérdida o disminución de su capacidad adquisitiva. . . Esa capacidad adquisitiva fué antes determinada, a virtud de la ley original, como el 'promedio semanal del jornal' durante el año anterior a la incapacidad; hoy se determina, a virtud de la enmienda a la ley, por el jornal diario . . . al tiempo de la incapacidad." *Rylander* v. *T. Smith & Son, Inc.*, 149 So. 434.

■■ El tercer error plantea dos cuestiones: una, la de si Fructuoso Serrano trabajaba real y efectivamente siete días a la semana; la otra, que el convenio colectivo existente entre la Unión de Trabajadores de Muelles y las compañías navieras no puede surtir tales efectos. La primera es una cuestión de hecho que no estamos autorizados a revisar en este procedimiento y debe, por tanto, desestimarse. La segunda nos lleva a considerar el alcance del contrato, copia del cual fué ofrecida y admitida en evidencia.

Dice el peticionario que dicho convenio "no es un contrato de arrendamiento de servicios, sino un convenio referente a, y regulador de la escala de retribución por servicios a prestar, más ciertas condiciones generales relacionadas con el trabajo y cuya unidad de servicios es la *hora* de trabajo, y sin que haya término de duración del trabajo a realizar." Creemos innecesario transcribir aquí todas las cláusulas del convenio. Basta decir que, a nuestro juicio, si por sus términos no obliga a los obreros agremiados a la Unión de Marinos Núm. 1 a trabajar los siete días de la semana, cuando menos les hace estar preparados para trabajarlos, que es todo cuanto requiere la ley y la jurisprudencia aplicables.

El propio recurrente parece dudar de los méritos de su contención, al decir en la solicitud que:

"Es por eso que si la Comisión hubiera limitado su resolución al punto en controversia sobre los obreros de los muelles, no estaríamos exponiendo ante este Hon. Tribunal lo improcedente de una carga injusta sobre el Fondo del Estado, toda vez que en aquel caso se hubiera limitado la controversia a interpretar la ley a la luz de las circunstancias especiales en que trabajan los obreros de los muelles."

Por las razones expuestas en esta opinión, *debe confirmarse la resolución recurrida tan sólo en su parte dispositiva, donde resuelve "que el obrero Fructuoso Serrano tiene derecho a recibir como compensación semanal la mitad del jornal que percibía el día del accidente, durante los siete días que constituyen una semana, por el período que estuvo incapacitado para trabajar, no excediendo esta compensación semanal de diez dólares de acuerdo con el inciso 2 del artículo 3 de la Ley 45 de abril 18 de 1935." El resto de la resolución se anula y deja sin efecto, por estar en conflicto con la interpretación que hemos dado al estatuto.*

El Juez Asociado Señor Córdova Dávila no intervino.