## RHONE v. SOUTHERN KRAFT CORPORATION.

### No. 5949.

Court of Appeal of Louisiana. Second Circuit.

April 28, 1939.

H. S. Hawthorne and Ada Mott, both of Bastrop, for appellant.

Madison, Madison & Files, of Bastrop, for appellee.

DREW, Judge.

This is a suit arising under the Workmen's Compensation Law of this State. Act No. 20 of 1914.

Plaintiff was in the employ of defendant corporation, engaged in his duties of firing a furnace, located in what is known as the recovery room. While engaged in throwing wood into the furnace some kind of explosion occurred, causing the flames to shoot out and set fire to the clothing of plaintiff and one of his fellow employees. They both turned to run and collided, one with the other. In the collision plaintiff was knocked down, falling on his stomach. The flames from his burning clothes were extinguished, he was helped to his feet. He then walked to the lavatory where grease was applied to his burns, then to the timekeeper and from there he walked to the sanitarium, more than a quarter of a mile away. He received further treatment there and went to his home.

Plaintiff was paid compensation at the rate of 65% of his weekly wage, based on a six working day week from the date of the accident, October 16, 1937, until September 30, 1938, at which time defendant ceased compensation payments, contending that plaintiff had fully recovered from any injury received in the accident. This suit followed. Plaintiff contends he is totally and permanently disabled and cannot perform work of any reasonable character. He also contends that the compensation should be based upon a seven working day week instead of a six working day week, and claims $50 for medical expenses incurred by him since defendant ceased furnishing him treatment. He also prays that expert witness fees in a sum not less than $50 each be fixed for the doctors testifying in the case and be taxed as costs.

The lower court awarded judgment for plaintiff in the sum of $10.92 per week, based on a seven working day week from October 16, 1937 to September 1, 1938, less the sum of $9.36 per week from October 16, 1937 to September 30, 1938, the amount heretofore paid by defendant. It further fixed the expert witness fees of the two doctors who testified for plaintiff at $50 each.

From this judgment plaintiff perfected an appeal and defendant has answered the appeal praying that the demands of plaintiff be rejected in toto.

Plaintiff does not claim compensation on account of burns he received. His claim is for other injuries. He contends that in falling his back struck a nozzle protruding above the concrete floor about twelve inches. That his spine was injured and the fall also caused a kink in his ureter.

■. One doctor who testified for plaintiff said there was injury to the fourth dorsal vertebra and a crushing of the intervertebral disc between the third and fourth dorsal vertebrae, causing what is known as Kummell's disease. He also claims to have found a fracture of the fifth lumbar vertebra. He found a kinked ureter, but did not consider it a serious impairment at the time of the trial. It was on this finding that he pronounced plaintiff totally and permanently disabled. Another doctor who testified for plaintiff thought him disabled but did not find the injury relied upon by the first medical witness. His statement of disability was based principally upon what he considered a sacro-iliac sprain. He stated, however, that he might be mistaken in his findings in this respect and the pain claimed by plaintiff could be caused by the kinked ureter. He stated that it was possible that what he considered a sacro-iliac sprain might have been a fracture of the fifth lumbar vertebra. However, he did not find such a fracture. The three doctors who testified for the defense are positive there was no fracture of the spine and that the kinked ureter was not disabling. In fact they are the doctors who treated plaintiff from the day of injury until he was discharged as well. They are positive that plaintiff had recovered from all injuries received in the accident at the time he was discharged. They further testified that it is not probable and almost impossible for a fall on the stomach such as plaintiff received to cause injury to the spine as contended by him. Their testimony is convincing and we find no sound reason for disturbing the finding of the lower court that plaintiff had fully recovered at the time compensation payments were stopped by defendant.

■ When plaintiff was employed it was contemplated by the employer and employee that he would work seven days a week. The mill never closed down for Sunday any more than on any other day. Whenever

there were sufficient orders the mill was in operation seven days a week. When it was necessary to close down for repairs the day on which to close down was not considered. Sunday was considered by the corporation as a work day just the same as any other day of the week and all employees were required to report for work on Sundays. Working on Sunday did not of itself convey the right to an employee to take off one week day. The only way an employee could have a day off was to request it and it was granted or not as the employer wished. The weekly time cards filed in evidence by the defendant covered a period of ten weeks prior to the date of the accident and disclosed that plaintiff worked on seven of the ten Sundays during that period and worked seven days a week on two of the ten weeks. Other weeks he worked six days, two days, four days, etc., according to the number of days the mill was in operation. Plaintiff's foreman testified that he had the same right to penalize an employee for not reporting for work on Sunday as he had for failing to report on any other day.

The record makes it clear to us that plaintiff was employed to work seven days a week and compensation should be based on a seven working day week instead of a six working day week. The facts of this case clearly distinguish it from the cases of King v. American Tank & Equipment Co., La. App., 144 So. 283, and Russo v. Southern Kraft Corp., La.App., 144 So. 764.

 Defendant complains of the judgment fixing the expert witness fees of the two doctors who testified for plaintiff at $50 each and contends that the usual amount allowed, which is reasonable, except in unusual cases, is $25. We are of the opinion the contention is meritorious. This case did not require more than one day in which to try and the testimony is not lengthy. There is nothing unusual about the case to require any great amount of study to prepare to testify as a witness in it. A doctor is entitled to a fair rate of pay when giving expert testimony, but in cases of this kind a fair amount of compensation is $25 apiece. It is not just to mulct either litigant with excessive fees for expert witnesses. The lower court in its judgment allowed defendant a credit for compensation paid from September 1 to September 30, 1938 on the judgment awarded plaintiff, on the theory, we presume, that defendant paid compensation during that period after plaintiff's disabilities had ceased. This credit is not justified under the pleadings. There is no reconventional demand by defendant and no contention made that it overpaid plaintiff. To the contrary, in Article 13 of its answer, it is alleged that plaintiff was "pronounced well, able and ready to go to work on October 3, 1938, and that your respondent has paid compensation in accordance with the act up until said date."

The judgment of the lower court is therefore amended by striking therefrom the credit allowed defendant for compensation paid from September 1 to September 30, 1938, and by reducing the expert witness fees fixed for Dr. C. H. Moseley and Dr. A. S. Hamilton from $50 each to $25 each, and in all other respects it is affirmed. Costs of appeal to be divided equally between appellant and appellee.