EUGENE E. LEON, Jr., Judge Pro Tern.
This is a suit for workmen’s compensation benefits. The Trial Court rejected plaintiff’s demands and dismissed his suit. This appeal followed.
The major issue is whether plaintiff has shown that he has suffered personal injury by accident. LSA-R.S. 23:1031 provides an employee may obtain benefits if he “receives personal injury by accident arising out of and in the course of his employment.” The definitions of accident and personal injury are provided in LSA-R.S. 23:1021 in pertinent part as follows:
“(1) ‘Accident’ means an unexpected or unforeseen event happening suddenly or violently, with or without human fault and producing at the time objective symptoms of an injury.”
* * * * * *
“(7) ‘Injury’ and ‘Personal Injuries’ includes only injuries by violence to the physical structure of the body and such disease or infections as naturally result therefrom. These terms shall in no case be construed to include any other form of disease or derangement, howsoever caused or contracted.”
Plaintiff-appellant claims to be a machinist engaged in heavy, hard labor, during the course of which he hurt his pre-diseased back on many occasions by straining to lift or pull, resulting in a physical breakdown on November 2, 1970, completely disabling him. He points out no specific, identifiable time of trauma or accident.
The facts are these:
Melvin P. Gorbach is a big man of 38 years of age at the time of trial. He had no previous history of back trouble prior to September, 1963, although he had been a paratrooper from 1953 to 1956, and thereafter worked as a machinist in several places before he began working as a machinist for Prager, Inc., in 1963. In September of that year, he was seen by his family physician, Dr. F. J. Padua, for back pain. The pain lasted approximately a week and a half and he was seen twice by Dr. Padua.
Gorbach had no further trouble with his back until July 30, 1965, when the automobile he was operating was struck in the rear. Dr. Padua diagnosed his injuries as a cervical sprain and a lumbar sprain. He was conservatively treated for about two months and • was discharged October 13, 1965, by the doctor as relatively asymptomatic. During this period, Gorbach took off only one or two days from work and testified that his pain had completely cleared up through Dr. Padua’s treatment. *620 Dr. Padua noted that Gorbach returned on April 28, 1966, complaining of headaches and nervousness, but he did not ascribe this to the lumbar injury. He also noted a visit on July 16, 1968, for' complaints of low back pain but no further treatment was required.
On March 24, 1969, Gorbach again visited Dr. Padua complaining of pain in his back. This time the pain worsened and" on April 7, 1969, Dr. Padua confined Gorbach to his home, and on April 14 had him admitted to Montelepre Hospital where he was examined by Dr. Raeburn C. Llewellyn, a neurosurgeon. Gorbach was placed in traction for eight days, and Dr. Llewellyn concluded that he needed more than conservative treatment, and diagnosing the condition as a lumbar disc syndrome, concluded he probably had a ruptured inter-vertebral disc between L4 and LS vertebrae, and a laminectomy was indicated. However, Gorbach refused because he felt that he could not afford to miss that much work because of his financial condition. Both Dr. Llewellyn and Dr. Padua felt that they coul afford him no significant relief conservatively and he would need an operation sooner or later. He was last seen by Dr. Padua on May 14, 1969.
On June 10, 1969, Gorbach visited a chiropractic who gave him spine manipulation treatments for some time thereafter.
Still seeking relief, but unwilling to undergo an operation, Gorbach went to the Orthopedic Section of Ochsner Clinic for an examination of his back. He then went to Dr. Santo Lococo, an orthopedic surgeon, for a third opinion in April, 1970. Dr. Lococo also diagnosed a possible herniated disc and recommended a laminecto-my and fusion.
During all of this period, except April and May, 1969, Gorbach continued to work daily at his job as a machinist. Finally, in August, 1970, he began showing up at work “listing to one side.” He worked daily in this twisted condition and it became necessary to leave work early one or two days a week because of the severity of his pain. He reported to his supervisor each time he left.
In September of 1970, Gorbach was driving a car and he struck an auto in front of him. He testified that he received no injury for that collision and did not consult a doctor.
Beginning in the middle of October, 1970, in order for Gorbach to get out of bed to go to work, he had to roll over on his stomach and slide out of bed feet first to the floor, then work himself into a kneeling position, then stand, and so to go work listing to one side. On his last day of work at Prager, Inc., he put in 14 hours. The -weekend intervened and on Monday, November 2, 1970, he could not rise to an erect position because of the pain, was no longer ambulatory, and could not go to work.
He was referred to Dr. Ray J. Haddad who placed him in Touro Infirmary on November 9, 1970, where, after a myelo-gram revealed a complete block of the L4 interspace, a laminectomy was performed and the completely extruded L4 disc was removed. Dr. Haddad discharged him on January 25, 1971, feeling he could return to work on February 1, 1971. He was refused re-employment by Prager, Inc., and at other similar businesses. He was finally employed on April 27, 1971, by the Sewerage and Water Board of New Orleans as a machinist at a reduced salary, only after signing a waiver for any claims arising out of his back condition.
Although the trial judge noted that the plaintiff left his employment several times in a “hunched over” position indicating a back problem, he found that there was never a reported incident or accident or an identifiable incident or accident occurring at work. After discussing the pertinent law, he concluded that Gorbach had not suffered an “accident” as defined in R.S. 23:1021(1), and accordingly denied benefits.
*621 We agree with the trial court’s findings of fact in general and we have related plaintiff’s medical history above. However, we disagree with his conclusions of law.
Plaintiff was employed as a machinist and millwright by Prager, Inc., from 1963 to November 2, 1970. In this employment he was regularly required to lift weights from 20 to 40 pounds (under union rules he could ask for assistance for 35 pounds or over), and manipulate them in a bent-over position. He was also required to use large, heavy wrenches and other tools which required considerable pulling and pushing. Gorbach admits that at no time did he suffer an accident in the usual sense of the word, that is, slip or fall, be struck by an object, etc. He testified that on a number of occasions, when he was required to lift something up, or pull with great effort, he could feel the strain coming on and he would begin to have back pains. This became more frequent and more severe in the last several months that he worked.
Plaintiff does not base his case upon the usual sudden, unexpected, violent accident. Instead he bases it on proof of repeated trauma or small strains which, over a period of time, finally caused a complete rupture of a weakened intervertebral disc, causing his inability to work. He relies especially on the cases of York v. E. I. DuPont de Nemours & Co., 37 So.2d 68 (La.App., 1st Cir., 1948) and Harris v. Southern Carbon Co., 162 So. 430 (La.App., 2nd Cir., 1935). We are convinced that the facts of the present case almost exactly parallel the facts of the York case, supra, and the essential, pertinent factual situation cannot be distinguished. The work history of the plaintiff shows numerous heavy strains to his back over a long period of time; his medical history shows the onset of more severe pain from April, 1969; the medical testimony shows the deterioration of the disc to the point of complete rupture and that such a rupture can be expected when the weakened disc is exposed to continual heavy strain or trauma. Thus we conclude that if the rationale expressed in York is valid law, we must similarly grant benefits. In York, the court cited with approval a quotation from Hill v. J. B. Beaird Corp., 19 So.2d 295 and 296 (La.App.) as follows in part:
“ ‘It is well established by our jurisprudence that the protection accorded by the Compensation Act of our State, Act No. 20 of 1914, as amended, against injury by accident comprehends and includes the giving way of affected parts of the body while at work, even though the disability was not the immediate result of an unusual strain or physical effort. * * *’”. 37 So.2d 83.
The court then held that York’s condition was due to repeated trauma caused by the manual labor which York performed while in the employ of' the defendant, thus he suffered the ruptured disc while in the course and scope of his employment.
Appellee argues to us that the rationale of York has been repudiated by later jurisprudence, and especially by the decision in Circello v. Haas & Haynie Corp., 116 So. 2d 144 (La.App., 1st Cir., 1959) and Hargrave v. Travelers Insurance Co., 187 So. 2d 8 (La.App., 1st Cir., 1966). In Circello the court did criticize the York and Harris cases saying they are against the weight of the jurisprudence, citing Malone, Louisiana Workmen’s Compensation (1951), Sec. 215. However, the court pointed out that the rationale of those cases was not applicable to the workman in Circello who had only worked one month for his employer. In the Hargrave case, the court similarly announced that York and Harris were against the weight of the jurisprudence, stating that any further extension of the rule of those cases would constitute judicial amendment of the definition of “accident”. However, we note in that case the workman’s symptoms were characterized as “bizarre” and his testimony was not believed by the court. Basically, the workman there simply did not carry the burden of proof necessary to recovery of benefits *622 and certainly an extension of the rule to cover his complaint would be improper.
*In the case at bar, we do not seek an extension of the rule. As we see the matter, we have the same essential facts as in the York case. While we agree that these facts do not .show one outstanding event to which we can point our finger and say “Eureka”, nevertheless we firmly believe that this workman was injured by great physical effort or strain on a number of occasions, causing the ruptured disc to block completely his nerve sac, preventing him from working. The intent of the Compensation Act must surely be to cover an injury resulting from several trauma as well as one.
We have been referred to numerous cases by both parties to this litigation, and we have examined many more through our own research. We note many in which the court seems to search for a single event upon which it can rest its decision. A recent example from this court is Montreuil v. Winn-Dixie Stores, Inc., 279 So.2d 701 (LaApp., 4th Cir., 1973). If a claimant such as Montreuil may recover because he says on date of November 27, 1970, at 11:00 P.M., while lifting pallet boards his back “gave out” on him and he experienced sharp pain in his back, should we refuse benefits to Gorbach who made no display of “accident” on October 30, 1970, the last day he worked, or even on April 6, 1969, just before his confinement then? We believe that Gorbach did suffer repeated traumatic episodes while at work, that he reported some of these to his supervisors and went home to rest on some unspecified days, yet he continued to work under conditions the doctors could not explain, until a final episode in October immobilized him. We choose to follow the rationale in the case of York v. E. I. DuPont de Nemours & Co., supra.
Dr. Ray J. Haddad was accepted as an expert orthopedic surgeon in the trial of this case. He testified that it is certain that the plaintiff has some percentage of disability in his back, and the plaintiff will have to function within that percentage of disability, whatever it may be. As a result he cannot perform some acts that a machinist normally does and he should not even attempt to do these things. It is thus apparent that the plaintiff will not be able to operate as well after November 2, 1970, as he did before that date. Further proof of this fact is found in the plaintiff’s inability to obtain a similar job after surgery, although he tried extensively to obtain such a job. When he at last obtained employment at reduced wages, he had to waive in writing all claims arising out of his back condition. We are convinced that the record discloses that the plaintiff was totally disabled for the period November 2, 1970 up to February 1, 1971. We therefore feel that an award of $49.00 per week for twelve weeks is justified. It is apparent from the testimony in the record that the plaintiff will have a permanent, partial disability and we feel an award of 65% of the difference between his salary pre-inju-ry, i. e., $4.41 hourly, and his salary post-injury, i. e., $3.20 hourly, or $32.00 per week not to exceed 300 weeks is justified. The record discloses that the plaintiff incurred medical costs of $2,254.97, and we accordingly award plaintiff this amount.
For the reasons assigned, the judgment appealed from is reversed and it is now ordered that the plaintiff, Melvin P. Gor-bach, do have and recover from defendants, Prager, Inc., and Northern Assurance Company of America, workmen’s compensation benefits as follows:
1. at the rate of $49.00 per week for twelve weeks beginning November 2, 1970 up to February 1, 1971 for temporary total disability; and
2. at the rate of $32.00 per week thereafter not to exceed 300 weeks for permanent partial disability;
3. all past due amounts to be paid in a lump sum, with legal interest on each of *623 said unpaid installments from their respective maturity dates until paid;
4. in the amount of $2,254.97 as medical expenses;
5. all costs in both courts are assessed against appellees.
Reversed and rendered.